UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY LA VIGNE and KRISTEN HESSLER, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>Defendant. | Civil Action No.:<br><br><u>CLASS ACTION COMPLAINT</u><br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiffs Mary La Vigne and Kristen Hessler ("Plaintiffs"), by their attorneys, allege the following upon information and belief, except for those allegations that pertain to Plaintiffs, which are based on Plaintiffs' personal knowledge, against Costco Wholesale Corporation ("Costco" or "Defendant"):

**NATURE OF THE ACTION**

1.     Plaintiffs purchased packages of six cans of Costco's Kirkland Signature Premium Chunk Chicken Breast ("Kirkland Canned Chicken") because the price being charged seemed like a reasonable price to pay for chicken. The label says that each can contains a net weight of 12.5 ounces and the can itself is more than two inches tall. However, the chunks of chicken are swimming in a pool of water. Each can contains slightly more than seven ounces of chicken, meaning that almost half of its content is water.

2.     Plaintiffs bring this action individually and on behalf of all other citizens of New York and citizens of Pennsylvania who purchased cans of Kirkland Canned Chicken (the "Class") within the relevant statute of limitations (the "Class Period").

3.     As alleged herein, Costco has continuously engaged in unconscionable business

practices and deceptive acts in connection with the marketing and sale of its Kirkland Canned Chicken during the Class Period, which have injured Plaintiffs and the Class and which will continue to injure consumers unless the practices are stopped.

4. Furthermore, Defendant's practices violate the United States Department of Agriculture's ("USDA") Poultry Products Inspection Act ("PPIA").  *See* 9 C.F.R. § 381.157(b). Under the PPIA, Costco could call its product "Premium Chunk Chicken Breast Packed in Water" if it increased the amount of chicken in each can to 10 ounces (i.e., 80% of 12.5 ounces) or, if it keeps the same amount of chicken, it must include the percentage of water in the name of the product (e.g., "Premium Chunk Chicken Breast Packed in 44% Water").

5. Costco's conduct alleged herein constitutes an unconscionable and deceptive commercial practice in violation of the New York General Business Law ("NYGBL") § 349, Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") 73 P.S. §§ 201-1 et seq., and a breach of implied warranty.  Plaintiffs seek an order enjoining such practice as well as awarding monetary damages.

**PARTIES**

6. Plaintiff Mary La Vigne is a citizen of New York.  Ms. La Vigne is a member of Costco and purchased Kirkland Canned Chicken from the Costco store in New Rochelle, New York.

7. Plaintiff Kristen Hessler is a citizen of Pennsylvania.  Ms. Hessler is a member of Costco and purchased Kirkland Canned Chicken from the Costco store in Pottstown, Pennsylvania.

8. Defendant Costco, a Washington corporation, together with its subsidiaries, operates membership warehouses.  The company offers branded and private-label products in a range of merchandise categories (such as canned chicken breast), including Kirkland Signature,

its house brand.  Costco believes that its products have a reputation for high quality at low prices, and Costco's chief operating officer said that "all Kirkland Signature products must be equal to or better than the national brands, and must offer a savings to our members."  Costco Connection, "It's In the Label:  Kirkland Signature Is a Brand Apart," Oct. 2009, http://www.costcoconnection.com/connection/200910?pg=31#pg31.  Costco is headquartered in Issaquah, Washington, and its common stock trades on the NASDAQ Global Select Market under the ticker symbol "COST."

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this action, pursuant to 28 U.S.C. § 1332(d), in that the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, and is a class action of more than 100 potential Class members in which Plaintiffs are citizens of New York and Pennsylvania while Defendant is a citizen of a different state.

10. Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a) because Ms. La Vigne resides and Defendant has transacted substantial business within this District within the meaning of 28 U.S.C. § 1391(a) as defined in 28 U.S.C. § 1391(c), and because a substantial part of the events giving rise to the claims alleged herein occurred in this District.

## FACTUAL ALLEGATIONS

11. Defendant sells its Kirkland Canned Chicken in its warehouse stores throughout the country.  The cans are grouped for sale in a package of six 12.5 ounce cans, with an opaque plastic wrapper that looks like this:



12. The package includes a Nutrition Facts panel as well as suggested recipes on the back side. The back of the package looks like this:



13. Each can in the package is slightly more than two inches tall and four inches in

diameter. The labels on each can are not visible in the six-can package prior to purchase, but the label on the can looks like this:





14. When a consumer opens a can of Kirkland Canned Chicken, it looks like this:



15. If a consumer drains the 2/3 of a cup of water in each can of Kirkland Canned Chicken, the remaining meat would like this:



16. On information and belief, each can of Kirkland Canned Chicken contains between 7 and 8 ounces of meat. This means that as much as 44% of weight of the contents of the can is water.

17. The label for Kirkland Canned Chicken simply says that it is "Packed in Water," which violates the USDA's Poultry Products Inspection Act because of the low amount of chicken in the can. The PPIA, Section P, establishes the definitions or standards of identity for poultry products. 9 C.F.R. § 381.155 *et seq*. This includes requiring all boned (i.e. boneless) canned poultry to meet the requirements set out in a table listing weight ranges and labelling requirements. *See* 9 C.F.R. § 381.157(b), (e). For example, if the product contains 80% to 90% cooked, boneless poultry meat and 20% to 10% liquid (such as broth or water), then the product name must specify

that the poultry is "with broth." 9 C.F.R. § 381.157 (Table II). However, if the poultry meat is only between 50% and 80% with 20% to 50% water or broth, then the product name must disclose the percentage of water or broth. *Id.* Costco's Kirkland Canned Chicken does not comply with either of these requirements since it contains less than 80% chicken and does not disclose the percentage of water in the can. This is Table II:

TABLE II

| Product name | Minimum percent cooked, deboned poultry meat of kind indicated, with skin, fat, and seasoning | Maximum percent liquid that may be added [1] |
|---|---|---|
| 1. Boned (Kind)—solid pack | 95 | 5 |
| 2. Boned (Kind) | 90 | 10 |
| 3. Boned (Kind) with broth [2] | 80 | 20 |
| 4. Boned (Kind) (___) percent broth [2,3] | 50 | 50 |

[1] Liquid may be in the form of, but is not limited to, broth or extractives.
[2] Alternatively, product may be prepared from raw boned poultry in combination with cooked boned poultry so long as the product complies with the specified standard.
[3] Total amount of liquid added shall be included in the name of the product; e.g., "Boned Chicken with 25 percent broth."

18.     In fact, the Federal Purchase Program Specification for Canned Boned Chicken White Meat, dated June 2016, not only requires compliance with the PPIA, but also clearly shows that canned chicken is expected to contain more meat than Kirkland Canned Chicken does: "12.5-oz Cans – Filled cans from a lot or sublot must average *not less than 10 oz.* (283.5 g) of commodity on a drained-weight basis." (Emphasis added.)

19.     Plaintiffs and the Class receive little benefit from water in the can that exceeds the USDA's labelling requirement. Costco does not intend for consumers to use the excess water in the can. For example, one recent package includes a recipe for Asian Chicken Lettuce Wraps, which requires the chicken to be drained. The packages also have a booklet of suggested recipes fixed to a can that use the canned chicken. These recipes, which include Chicken Sliders and

Chicken Salad, direct consumers to drain the chicken before using it in a dish.

20. Costco provides its members with a calculation of the unit price for its Kirkland Canned Chicken, which allows customers to compare the price of its product with a competitor's chicken on a per pound basis. However, the unit price provided by Costco is calculated using the gross weight of the contents, which includes chicken and water. This misleadingly leads consumers to believe that the price per pound of chicken is lower than it actually is, since more than 40% of the weight is actually water.

21. Ms. La Vigne purchased Kirkland Canned Chicken from the Costco located in New Rochelle using her Costco account within the last year. It is her habit to review the price, package, and label information before purchasing a product, and she would use this information when purchasing Kirkland Canned Chicken. The Kirkland Canned Chicken cost approximately $11.00. Just like Ms. Hessler and the other members of the Class, the cans Ms. La Vigne purchased were filled with roughly 40% water.

22. Ms. Hessler purchased Kirkland Canned Chicken at the Costco store in Pottstown, Pennsylvania using her family's Costco account within the last year. Ms. Hessler looked at the price for the six can package, the sign listing the unit pricing for the cans, and the information on the packaging. Ms. Hessler used this information in her decision to purchase the chicken. On information and belief, there is little or no advertising for Kirkland Canned Chicken aside from the packaging itself and the tag on the shelf. The Kirkland Canned Chicken cost approximately $11.00.

23. When Ms. Hessler brought the Kirkland Canned Chicken home and used it to make her recipe for buffalo chicken dip, she was surprised because there was less chicken in the can than she expected. In fact, she had to use more cans of Kirkland Canned Chicken than she did when

she used a competitor's canned chicken product. This is because so much of the can was filled with water instead of chicken.

24. Plaintiffs reasonably believed that they were purchasing a package that contained an adequate amount of chicken in each can because of the misrepresentations on the label, the packaging, the price label on the shelf, the unit pricing, the other materials included with the package, and the size of the can. However, Plaintiffs received a product that had substantially less chicken than should have been in the can. Plaintiffs have suffered damages in the amount of the difference between the prices paid for what they reasonably believed they were purchasing and the value of what they actually received. For example, if the cans only contain 7.5 ounces of chicken then this is only 60% of the contents of the 12.5 ounce can. This 60% is 25% less than the 80% minimum allowed under the USDA's requirements for the current label Costco uses. Therefore, Plaintiffs overpaid by 25%. In other words, Plaintiffs are not contesting the quality of the chicken chunks, but rather that they were shortchanged and received too little chicken.

## CLASS ALLEGATIONS

25. Plaintiffs bring this suit as a class action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).

26. Ms. La Vigne seeks to represent a class (the "New York Class"; collectively with the Pennsylvania Class, the "Class") that consists of:

> All citizens of New York who purchased Costco's Kirkland Canned Chicken at any time from October 7, 2013, to the present.

27. Ms. Hessler seeks to represent a class (the "Pennsylvania Class") that consists of:

> All citizens of Pennsylvania who purchased Costco's Kirkland Canned Chicken at any time from October 7, 2010, to the present.

28. Upon completion of discovery with respect to the scope of the Class, Plaintiffs

reserve the right to amend the Class definition. Excluded from the Class are Defendant, its parents, subsidiaries and affiliates, directors and officers, and members of their immediate families.

29. The members of the Class are so numerous that joinder is impracticable. At a minimum, thousands of persons in New York and in Pennsylvania purchased Costco's Kirkland Canned Chicken during the Class Period. Moreover, thousands more will continue to purchase the product if Costco's practices are not stopped. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Upon information and belief, Costco maintains detailed sales data for every purchase made by its members at Costco's warehouse stores. Class members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant (and, to the extent applicable, third party retailers and vendors).

30. Plaintiffs' respective claims are typical of the claims of the New York Class, the Pennsylvania Class, and the entire Class, as they purchased Costco's Kirkland Canned Chicken during the Class Period and sustained damages as a result of Costco's conduct.

31. Plaintiffs will fairly and adequately represent and protect the interests of the other Class members for purposes of Federal Rule of Civil Procedure 23(a)(4). Plaintiffs have no interests antagonistic to those of other Class members. Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel experienced in litigation of this nature.

32. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class, including, but not limited to:

  a) whether Costco's Kirkland Canned Chicken contains a greater percentage of liquid than the maximum amount allowed by statute;

b) whether Defendant warranted that its Kirkland Canned Chicken contained an adequate amount of chicken for a 12.5 ounce can (as measured by subtracting the liquid from the total net weight of the product);

c) whether Defendant's acts and practices in connection with the promotion and sale of its Kirkland Canned Chicken violated the NYGBL;

d) whether Defendant's acts and practices in connection with the promotion and sale of its Kirkland Canned Chicken violated the UTPCPL;

e) whether Defendant warranted that its Kirkland Canned Chicken is legal for sale in the United States and, if so, whether Defendant breached such warranties;

f) whether Defendant's Kirkland Canned Chicken violates the Poultry Products Inspection Act;

g) whether Defendant's conduct, as set forth herein, damaged members of the Class and, if so, the measure of those damages;

h) whether Defendant's acts and practices in connection with the promotion and sale of its Kirkland Canned Chicken should be enjoined; and

i) whether the UTPCPL and NYGBL should apply to all respective class members.

33. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

34. Class certification is also appropriate under Federal Rule of Civil Procedure

23(b)(2) because the Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

35. Class members have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct.

## FIRST CAUSE OF ACTION

### Violation of New York General Business Law § 349
### By Plaintiff La Vigne on Behalf of the New York Class

36. Plaintiff La Vigne hereby incorporates by reference the allegations contained in preceding paragraphs 1-6 and 8-35 of this complaint.

37. Plaintiff La Vigne brings this claim individually and on behalf of the members of the New York Class against Defendant.

38. New York General Business Law § 349 provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

39. Costco's representations on its Kirkland Canned Chicken are consumer oriented. As alleged fully above, Costco engaged in deceptive acts and practices within the meaning of NYGBL § 349.

40. As detailed herein, Defendant's conduct with respect to its promotion, marketing and sale of its Kirkland Canned Chicken constitutes unconscionable commercial practices, deceptions, frauds, false promises or misrepresentations of material facts, including representing and suggesting to consumers that its Kirkland Canned Chicken includes an adequate amount of chicken.

41. As an actual and proximate result of Defendant's misconduct, Plaintiff La Vigne and the New York Class have suffered damages in that they purchased a product and received less

than what was promised, and they are entitled to receive an amount necessary to fulfill their expectation of the promised product. As explained above, consumers have received 25% less meat than is allowed under the USDA regulations, and therefore have overpaid by 25%.

## SECOND CAUSE OF ACTION

**Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law
By Plaintiff Hessler on Behalf of the Pennsylvania Class**

42. Plaintiff Hessler hereby incorporates by reference the allegations contained in preceding paragraphs 1-5 and 7-35 of this complaint.

43. Plaintiff Hessler brings this claim individually and on behalf of the members of the Pennsylvania Class against Defendant.

44. The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-3, provides that "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 of this act and regulations promulgated under section 3.12 of this act are hereby declared unlawful."

45. Section 201-2(4)(v) defines "Unfair methods of competition" and "unfair or deceptive acts or practices" to include "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have."

46. Section 201-2(4)(vii) defines "Unfair methods of competition" and "unfair or deceptive acts or practices" to include "Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another."

47. Section 201-2(4)(xxi) defines "Unfair methods of competition" and "unfair or deceptive acts or practices" to include "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

48. Costco's representations on its Kirkland Canned Chicken are consumer oriented. As alleged fully above, Costco engaged in deceptive acts and practices within the meaning of UTPCPL § 201-2.

49. As detailed herein, Defendant's conduct with respect to its promotion, marketing and sale of its Kirkland Canned Chicken constitutes unconscionable commercial practices, deceptions, frauds, false promises or misrepresentations of material facts, including representing and suggesting to consumers that its Kirkland Canned Chicken: includes an adequate amount of chicken; meets the standard, quality, or grade established by the USDA requirements; and contains the quantity of chicken suggested by the package and unit price label.

50. As an actual and proximate result of Defendant's misconduct, Plaintiff Hessler and the Pennsylvania Class have suffered damages in that they purchased a product and received less than what was promised, and they are entitled to receive an amount necessary to fulfill their expectation of the promised product. As explained above, consumers have received 25% less meat than is allowed under the USDA regulations, and therefore have overpaid by 25%.

## THIRD CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability
### By Plaintiffs on Behalf of the Class

51. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

52. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

53. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that its Kirkland Canned Chicken contained an adequate amount of chicken for a 12.5 ounce can (vis-à-vis meeting USDA regulations limiting the maximum amount of liquid

permissible in the product) and that it was legal for sale in the United States.

54. Defendant breached the warranty implied in the contract for the sale of its Kirkland Canned Chicken because the product was not merchantable at the time of sale in the United States and was not fit for its intended and ordinary purpose because it contained more liquid than was permissible under USDA regulations. As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Defendant to be merchantable.

55. Plaintiffs and Class members purchased Costco's Kirkland Canned Chicken in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

56. The product was not altered by Plaintiffs or Class members, and was defective at the time of sale, by the time it left the exclusive control of Defendant. Defendant knew it would be purchased and used without additional testing by Plaintiffs and Class members.

57. As a direct and proximate result of Defendant's breach of implied warranty, Plaintiffs and the members of the Class suffered economic loss and have been otherwise injured and harmed because: (a) they would not have purchased Kirkland Canned Chicken on the same terms if the true facts were known concerning its quantity and failure to comply with USDA regulations; (b) they paid a price premium for Kirkland Canned Chicken due to Defendant's promises that it contained an adequate amount of chicken for a 12.5 ounce can; and (c) Kirkland Canned Chicken did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

(a) determining that this action is properly brought as a class action and certifying

Plaintiffs as the representatives of the Class (their respective state Classes) and their counsel as Class counsel;

(b) awarding Plaintiffs and the proposed Class members their actual damages, trebled, and statutory damages (as appropriate under their respective Causes of Action);

(c) awarding preliminary and permanent injunctive relief restraining Defendant from continuing the unlawful practices set forth herein;

(d) awarding attorneys' fees and costs and expert fees and reimbursement of costs and expenses expended in litigating this action; and

(e) granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury for all claims so triable.

DATED: October 11, 2016

WOLF POPPER LLP

 /s/ Patricia I. Avery
Patricia I. Avery
Matthew Insley-Pruitt
Robert Plosky
845 Third Avenue
New York, New York 10022
(212) 759-4600

*Counsel for Plaintiffs and the Class*