**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------

MARY LA VIGNE, KRISTEN HESSLER,
and KATHLEEN HOGAN on behalf of
themselves and all others similarly situated,

                 Plaintiffs,

      vs.                               **Civil Action No.: 7:16-cv-07924-NSR**

COSTCO WHOLESALE
CORPORATION,

                 Defendant.

-------------------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF COSTCO WHOLESALE CORPORATION'S MOTION TO DISMISS

TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY 10022
Tel: 212-704-6000
Fax: 212-704-6288

*Counsel for Costco Wholesale Corporation*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ............................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY................................ 2

ARGUMENT AND CITATION OF AUTHORITY ........................................... 4

I.      POULTRY PRODUCT LABELS ARE REGULATED BY THE PPIA .......... 5

II.     PLAINTIFFS' CLAIMS ARE EXPRESSLY PREEMPTED BY THE
        SWEEPING PREEMPTION CLAUSE OF THE PPIA .................................. 6

        A.    Plaintiffs' Claims Impose a Labeling Requirement ............................... 7

        B.    Plaintiffs' Claims Are in Addition to or Different Than the Requirements
              Established by the PPIA Because They Would Override the Label Pre-
              Approval Process of the FSIS ................................................................ 8

III.    PLAINTIFFS' CLAIMS CANNOT BE PREMISED ON A VIOLATION OF
        THE PPIA BECAUSE THE PPIA DOES NOT PROVIDE A PRIVATE RIGHT
        OF ACTION ................................................................................................... 11

IV.     PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO
        REASONABLE CONSUMER WOULD BE MISLED BY KIRKLAND
        CANNED CHICKEN'S PACKAGING AND LABEL ................................. 15

        A.    New York General Business Law § 349............................................... 15

        B.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73
              P.S. § 201.3 ......................................................................................... 18

              1.    Allegations of False Advertising under PUTPCPL, 73 § 201-
                    2(4)(v) ....................................................................................... 18

              2.    Allegations of Fraud under PUTPCPL, 73 § 201-2(4)(vii) ..................... 20

              3.    Allegations of Fraudulent or Deceptive Conduct under PUTPCPL,
                    73 § 201-2(4)(xxi)...................................................................... 21

        C.    Massachusetts General Law, Chapter 93A .......................................... 22

CONCLUSION.................................................................................................. 24

i

# TABLE OF AUTHORITIES

**Case**                                                               **Page(s)**

*Altria Group, Inc. v. Good*,
   555 U.S. 70 (2008)..................................................................................................7

*Amalfitano v. NBTY, Inc.*,
   9 N.Y.S.3d 352 (2015)..........................................................................................18

*Animal Legal Def. Fund v. Provimi Veal Corp.*,
   626 F. Supp. 278 (D. Mass. 1986) ........................................................................13

*Aspinall v. Philip Morris Cos.*,
   442 Mass. 381 (2004) ............................................................................................24

*Arnold v. Kroger Co.*,
   45 N.E.3d 1092 (Ohio App. 2016)........................................................................10

*Baker v. Family Credit Counseling Corp.*,
   440 F. Supp. 2d 392, 413 (E.D. Penn. 2006) ........................................................21

*Barberan v. Nationpoint*,
   706 F. Supp. 2d 408 (S.D.N.Y. 2010)....................................................................8

*Barnes v. Campbell Soup Co.*,
   2013 U.S. Dist. LEXIS 118225 (N.D. Cal. July 25, 2013).....................................9

*Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*,
   2012 Pa. Super. LEXIS 97 (Mar. 6, 2012)......................................................21, 22

*Broder v. Cablevision Sys. Corp.*,
   418 F.3d 187 (2d Cir. 2005)..................................................................................13

*Commonwealth v. Manson*,
   2006 Pa. Commw. LEXIS 383 (July 10, 2006) .....................................................22

*Conboy v. AT&T Corp.*,
   241 F.3d 242 (2d Cir. 2001).............................................................................12, 13

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000)................................................................................................6

*Datacomm Interface, Inc. v. Computerworld, Inc.*,
   396 Mass. 760 (1986) ............................................................................................23

*DiLucido v. Terminix Int'l*,
   450 Pa. Super. 393 (1996)......................................................................................19

*Duke Energy Trading & Mktg, L.L.C. v. Davis*,
    267 F.3d 1042 (9th Cir. 2001) ................................................................................9

*Galiano v. Fid. Nat'l Title Ins. Co.*,
    684 F.3d 309 (2d Cir. 2012)..................................................................................4

*Henry v. Gerber Prods. Co.*,
    2016 U.S. Dist. LEXIS 52638 (D. Ore. Apr. 18, 2016)........................................14

*Kramer v. Time Warner, Inc.*,
    937 F.2d 767 (2d Cir. 1991)..................................................................................8

*Kuenzig v. Kraft Foods, Inc.*,
    2011 U.S. Dist. LEXIS 102746 (M.D. Fla. Sept. 12, 2011), *aff'd*, 505 F. App'x 937
    (11th Cir. 2013)....................................................................................................9

*Kurns v. R.R. Friction Prods. Corp.*,
    565 U.S. 625 (2012)..............................................................................................6

*Loreto v. P&G*,
    515 F. App'x 576 (6th Cir. 2013) .........................................................................13

*Meaunrit v. ConAgra Foods, Inc.*,
    2010 U.S. Dist. LEXIS 73599 (N.D. Cal. July 20, 2010).................................7, 8, 9

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
    85 N.Y.2d 20, 26 (1995) .....................................................................................15

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
    507 F.3d 117 (2d Cir. 2007)..................................................................................4

*Purity Supreme, Inc. v. Attorney Gen.*,
    380 Mass. 762 (1980) .........................................................................................23

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312 (2008).............................................................................................10

*Rizzo v. Michener*,
    401 Pa. Super. 47 (1990).....................................................................................21

*Rogers v. Tyson Foods, Inc.*,
    308 F.3d 785 (7th Cir. 2002) ...............................................................................11

*Segovia v. Vitamin Shoppe, Inc.*,
    2016 U.S. Dist. LEXIS 15171 (S.D.N.Y. Feb. 5, 2016)........................................16

*Sokolski v. Trans Union Corp.*,
    53 F. Supp. 2d 307 (E.D.N.Y. 1999) ...................................................................16

*Stutman v. Chem. Bank*,
    95 N.Y.2d 24 (2000) ............................................................................................................15

*Terauro v. Quigley Corp.*,
    2001 Phila. Ct. Com. Pl. LEXIS 73 (Apr. 9, 2001) .................................................20

*Toy v. Metro. Life. Ins. Co.*,
    593 Pa. 20 (2007) ...............................................................................................................19

*Trazo v. Nestlé USA, Inc.*,
    2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9, 2013) ......................................10

*Tyler v. Michaels Stores, Inc.*,
    464 Mass. 492 (2013) ........................................................................................................24

*Verzani v. Costco Wholesale Corp.*,
    641 F. Supp. 2d 291 (S.D.N.Y. 2009) .........................................................................17

*Verzani v. Costco Wholesale Corp.*,
    2010 U.S. Dist. LEXIS 107699 (S.D.N.Y. Sept. 28, 2010), *aff'd* 432 F. App'x 29 (2d
    Cir. 2011) ..................................................................................................................11, 12, 17

*Weinberg v. Sun Co.*,
    1999 PA Super. 228 (Sept. 10, 1999), *rev'd on other grounds*, 565 Pa. 612 (2001).........18, 19

**STATUTE**

21 U.S.C. § 337(a) ..............................................................................................................11

21 U.S.C. § 451 ......................................................................................................................5

21 U.S.C. § 457(c) ................................................................................................................5

21 U.S.C. § 463(b) ...............................................................................................................5

21 U.S.C. § 467c ..................................................................................................................11

21 U.S.C. § 467e ...................................................................................................................7

9 C.F.R. § 381.129(a) ..........................................................................................................5

9 C.F.R. § 381.130 ...............................................................................................................6

9 C.F.R. § 412.1 ....................................................................................................................6

Fed. R. Civ. P 12(b)(6) ........................................................................................................4

Fed. R. Evid. 201(b) .............................................................................................................9

Massachusetts General Law ("MGL"), Chapter 93A ........................................................... passim

New York General Business Law ("NYGBL") § 349........................................................... passim

Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73
    P.S. §§ 201-1 *et seq.*...................................................................................................... passim

Defendant Costco Wholesale Corporation ("Costco") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Amended Complaint of Plaintiffs Mary La Vigne ("La Vigne"), Kristen Hessler ("Hessler"), and Kathleen Hogan ("Hogan") on behalf on themselves and all others similarly situated (collectively "Plaintiffs").

## INTRODUCTION

Plaintiffs assert claims under New York, Pennsylvania, and Massachusetts statutes that prohibit deceptive acts or practices in the sale of consumer goods. Plaintiffs allege that Costco's advertisement and sale of its Kirkland Signature Premium Chunk Chicken Breast ("Kirkland Canned Chicken") constitutes a deceptive practice under these state-law statutes. The premise of Plaintiffs' claims is that the packaging and label of the Kirkland Canned Chicken violates the Poultry Products Inspection Act ("PPIA"). Specifically, Plaintiffs allege that the packaging of Kirkland Canned Chicken does not comply with PPIA regulations relating to disclosure of the amount of water in each can of chicken, thereby misleading consumers into believing each can has more chicken in it than it actually contains. Plaintiffs readily admit that their claims are predicated on purported violations of the PPIA; indeed, they have to admit that their claims are predicated on the PPIA because, without reference to the regulations promulgated pursuant to the PPIA, Plaintiffs' claims are facially groundless.

But therein lies the fundamental fatal flaw of Plaintiffs' Complaint. The PPIA includes an express preemption provision that prohibits a state from imposing any labeling requirement in addition to or different than the requirements prescribed by the PPIA. Plaintiffs' state law claims seek to impose labeling requirements different than those prescribed by the PPIA. Thus, Plaintiffs claims are expressly preempted by the PPIA. Furthermore, the PPIA lacks a private right of action. To the extent Plaintiffs' claims rely on any purported violations of the PPIA,

1

those claims must be dismissed because they thwart Congress's intent to confine all actions to enforce the PPIA to be filed by and in the name of the United States. Finally, even assuming Plaintiffs' state law claims do not run contrary to the express preemption and the enforcement clauses of the PPIA, Plaintiffs' claims still fail as a matter of law because no reasonable consumer would be misled by the plain language of the packaging and label of the Kirkland Canned Chicken.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Costco is a membership-only warehouse club that offers both branded and private-label products at its warehouses. One of Costco's private labels is Kirkland Signature. At issue in this case is a canned chicken product sold under the Kirkland label (referred to herein as Kirkland Canned Chicken). Kirkland Canned Chicken is sold in packages of six 12.5 ounce cans, bound together with a blue wrapper.

The front of the bulk package shows, among other things, the name of the product, the number of cans, and the weight of the product. (*See* Am. Compl. ¶ 12.) Under the name of the product, the package states that the chicken breast is "Packed in Water." (*Id.*) The front of the package also indicates that the package includes six cans and provides as follows: "NET WT 6—12.5 OZ (354g) CANS TOTAL 4.6 LB (2.13kg)." (*Id.*) The back of the package includes, among other things, the nutrition label, a suggested recipe for the chicken, and the barcode. (*Id.* at ¶ 13.) Under the title "Nutrition Facts," the bulk package states "Serving Size 2 oz drained." The next line reads "Servings Per Container About 21." (*Id.*)

Each can in the package includes a front label similar to that provided on the bulk package, with the terms "Packed in Water" appearing adjacent to the name of the product. (*Id.* at ¶ 14.) The bottom of the front label of each can reads "NET WT 12.5 OZ (354g)." (*Id.*) The

back of the can includes the nutrition label.  Under the bolded title "Nutrition Facts," the label reads "Serving Size 2 oz drained," and "Servings Per Container About 3.5."  (*Id.*)

As indicated on the label, each can of chicken includes approximately 7 ounces of chicken that is packed in roughly 5.5 ounces of water.  Because each package of cans is comprised of six cans of chicken, each package of Kirkland Canned Chicken contains approximately 42 ounces of chicken.

On October 11, 2016, Plaintiffs La Vigne and Hessler filed a complaint on behalf of themselves and all others similarly situated claiming that Costco's sale and advertisement of its Kirkland Canned Chicken constitutes a deceptive commercial practice in violation of New York General Business Law ("NYGBL") § 349 and Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 *et seq.*  (*See* Original Compl. [Dkt. 1] ¶¶ 5, 36-50.)  Specifically, Plaintiffs La Vigne and Hessler alleged that Costco's sale of its Kirkland Canned Chicken violates the PPIA by not indicating on the label that the chicken is packed in "44% water."  (*See id.* at ¶¶ 4, 17-18.)[1]

In accordance with this Court's Individual Practices in Civil Cases, Costco submitted a letter to the Court asserting its intent to move to dismiss the original complaint in its entirety and setting forth the basis for that motion to dismiss.  (*See* Costco's Letter Requesting Permission to File Mot. to Dismiss [Dkt. 8].)  On February 8, 2016, the Court entered a scheduling order granting Plaintiffs leave to file an amended complaint and granting Costco leave to file a motion to dismiss.  (*See* Br'g Schedule Order [Dkt. 15].)

On March 1, 2017, Plaintiffs filed an Amended Complaint.  While many of Plaintiffs' allegations remain identical to those asserted in the Original Complaint, there are two substantive

---

[1] Plaintiffs also alleged breach of implied warranty of merchantability, but that claim was omitted in the Amended Complaint.  (*See* Original Compl. ¶¶ 51-57.)

3

additions to the Amended Complaint: (1) it names Hogan as a plaintiff on behalf of herself and all others similarly situated, and (2) it alleges that Costco's sale and advertisement of its Kirkland Canned Chicken constitutes an unfair and deceptive act or practice in violation of Massachusetts General Law ("MGL"), Chapter 93A.  (*See* Am. Compl. [Dkt. 17] ¶¶ 5, 56-62.)

## ARGUMENT AND CITATION TO AUTHORITY

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Galiano v. Fid. Nat'l Title Ins. Co.*, 684 F.3d 309, 313 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "'The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  While the court accepts factual matters contained in a plaintiff's complaint as true, the court "giv[es] no effect to legal conclusions couched as factual allegations."  *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Plaintiffs' Amended Complaint must be dismissed in its entirety for three reasons: (1) Plaintiffs' claims are preempted by the PPIA; (2) Plaintiffs' claims are precluded to the extent they are predicated on violations of the PPIA, which lacks a private right of action; and (3) Plaintiffs' claims fail as a matter of law because no reasonable consumer would be misled by Kirkland Canned Chicken's packaging and label.

## I.   Poultry Product Labels Are Regulated by the Poultry Products Inspection Act.

Congress passed the Poultry Products Inspection Act, 21 U.S.C. § 451 *et seq.*, in 1957 to regulate the production of poultry and poultry products.  The PPIA reflected Congress's judgment that it was essential to the public interest to ensure that "the health and welfare of

4

consumers be protected by assuring that poultry products distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged." 21 U.S.C. § 451.

To effect its express intent to prohibit the sale of adulterated or misbranded poultry products, Congress designed the Act to regulate poultry products from beginning to end—from development to manufacture to sale. The United States Department of Agriculture ("USDA") is charged with enforcing the PPIA, and the PPIA directs the Secretary of Agriculture ("Secretary"), or his delegate, to promulgate other rules or regulations as are necessary to carry out the provisions of the PPIA. 21 U.S.C. § 463(b).

Pursuant to the authority granted by the PPIA, the Secretary has promulgated several regulations governing the label of poultry products. Pertinent to the claims before the Court, the PPIA prohibits the sale of poultry products with "false or misleading" labeling. 21 U.S.C. § 457(c). The Secretary promulgated the following corresponding regulation:

> No poultry products subject to the Act shall have any false or misleading labeling or any container that is so made, formed, or filled as to be misleading. However, established trade names and other labeling and containers which are not false or misleading and which are approved by the Administrator in the regulations or in specific cases are permitted.

9 C.F.R. § 381.129(a).

Labels under the purview of the PPIA are subject to pre-approval by the Food Safety and Inspection Service ("FSIS"), which is a public health agency of the USDA charged with ensuring that the United States' supply of meat, poultry and egg products is safe, wholesome, and correctly labeled and packaged. FSIS reviews labels to determine whether they are false or misleading. The governing regulation provides:

> No final label may be used on any product unless the label has been submitted for approval to the FSIS Labeling and Program Delivery Staff, accompanied by FSIS Form 7234-1, Application for Approval of Labels, Marking, and Devices, and approved by such staff . . . .

*Id.* § 412.1. If FSIS determines that the label is false or misleading, FSIS may direct that the product be withheld until it is modified in the manner prescribed by FSIS so that it is no longer false or misleading. *See id.* § 381.130.

Accordingly, for a poultry product to be disseminated to the market, its label has to be approved by FSIS and determined to be not "false or misleading" in violation of the PPIA; the packaging and label on Costco's Kirkland Canned Chicken has been approved by FSIS. In accordance with 9 C.F.R. § 412.1, Costco filed an Application for Approval of Labels, Marking, and Devices for Kirkland Canned Chicken, and FSIS approved Costco's Application. A true and correct copy of Costco's Application, which was submitted to FSIS and returned with the U.S. Department of Agriculture's "Approved" stamp on the first page, dated October 8, 2014, is attached hereto as Exhibit A.[2] Thus, the label on Costco's Kirkland Canned Chicken has been found by FSIS to be not false or misleading; this finding defeats any claim by plaintiffs that the label is false or misleading.

## II.    **Plaintiffs' Claims Are Expressly Preempted by the PPIA.**

---

[2] It is well established that in ruling on a motion to dismiss, a court may take judicial notice of public records pursuant to Federal Rule of Evidence 201 without converting the motion to a summary judgment motion. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (taking judicial notice of a public disclosure document required to be filed with the SEC in the context of a motion to dismiss, reasoning that documents publically filed are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" in accordance with Rule 201(b)(2)). This Court may take judicial notice of facts that are "not subject to reasonable dispute" in that those facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Application for Approval of Labels, Marking, and Devices fits this description, as it is a document "capable of accurate and ready determination" by resort to public records of a government agency—the U.S. Department of Agriculture—which are on file with the Department. *See Duke Energy Trading & Mktg, L.L.C. v. Davis*, 267 F.3d 1042, 1048 n.3 (9th Cir. 2001) (taking judicial notice of a letter to state control board and statement of claim filed with state claims board). Thus, the Court may properly take judicial notice of these records.

The United States Supreme Court has long held that state laws can be preempted "through the 'direct operation of the Supremacy Clause.'" *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 630 (2012) (quoting *Brown v. Hotel Emps.*, 468 U.S. 491, 501 (1984)). The Supreme Court has articulated that preemption can occur in three circumstances: (1) where Congress expressly preempts state law; (2) where the scope of a federal statute signals that Congress intended federal law to occupy an entire field exclusively; and (3) where, even if Congress has not occupied the field, the state law is in conflict with a federal statute. *See id.* at 630. With respect to the first, known as express preemption, the Supreme Court has declared that "[a] fundamental principle of the Constitution is that congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). A court's inquiry "into the scope of a statute's pre-emptive effect is guided by the rule that '[t]he purpose of Congress is the ultimate touchstone in every pre-emption case.'" *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).

The preemption clause of the PPIA provides, in relevant part:

Marking, labeling, packaging, or ingredient requirements (or storage or handling requirements found by the Secretary to unduly interfere with the free flow of poultry products in commerce) in addition to, or different than, those made under this chapter may not be imposed by any State or Territory or the District of Columbia with respect to articles prepared at any official establishment in accordance with the requirements under this chapter, but any State or Territory or the District of Columbia may, consistent with the requirements under this chapter exercise concurrent jurisdiction with the Secretary over articles required to be inspected under this chapter for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated or misbranded and are outside of such an establishment. . . .

21 U.S.C. § 467e. Accordingly, to be expressly preempted under the PPIA, a state law must satisfy two conditions: "(1) the state law must impose marking, labeling, packaging, or ingredient requirements; and (2) these requirements must be 'in addition to, or different than'

7

those required under federal law." *Meaunrit v. ConAgra Foods, Inc.*, 2010 U.S. Dist. LEXIS 73599, at \*14 (N.D. Cal. July 20, 2010) (quoting 21 U.S.C. § 467e).

### A.    Plaintiffs' Claims Impose a Labeling Requirement.

Plaintiffs allege that the label of Kirkland Canned Chicken is deceptive and misrepresents the quantity of chicken contained in each can.  Under Plaintiffs' theory, to comply with the various state laws at issue, the packaging and label of Kirkland Canned Chicken would have to disclose the percentage of water contained in each can.  In other words, Plaintiffs ask this Court to require Costco to alter the label of Kirkland Canned Chicken to satisfy the requirements of state statutes cited by Plaintiffs (at least as interpreted by Plaintiffs).  Such an order would impose a labeling requirement on Costco, which is subject to a preemption analysis.  *See Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 429 (S.D.N.Y. 2010) ("[P]reemption of any state law 'requirement or prohibition' includes both statutory and common law claims." (citing *Premium Mortg. Corp. v. Equifax Info. Servs., LLC*, 583 F.3d 103, 106 (2d Cir. 2009))).

### B.    Plaintiffs' Claims Are in Addition to or Different Than the Requirements Established by the PPIA Because They Would Override the Label Pre-Approval Process of the FSIS.

Plaintiffs' state law claims seek to impose requirements in addition to or different than the requirements established by the PPIA.  "[A] state requirement is in addition to or different from federal requirements if it is not 'equivalent' or 'parallel'" to the requirements under the PPIA."  *Meaunrit*, 2010 U.S. Dist. LEXIS 73599, at \*15 (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 445 (2005)).

As discussed above, labels on products subject to the PPIA are subject to pre-approval by FSIS.  *See* 9 C.F.R. §§ 381.129(a), 412.1.  That pre-approval process involves a determination by FSIS that the label is in compliance with the provisions of the PPIA and its corresponding

8

regulations—that is, that the label is not "false or misleading."   9 C.F.R. § 381.130; *Meaunrit*, 2010 U.S. Dist. LEXIS at \*17-18 (articulating that the "pre-approval process for labels involves a determination of whether the labels are 'false or misleading'" under 21 U.S.C. § 457).

Numerous courts have concluded that when a poultry product is subject to and passes the pre-approval process by FSIS, a plaintiff's claim under a state statute alleging that the product is deceptive is expressly preempted by the PPIA.  For instance, in *Kuenzig v. Kraft Foods, Inc.*, a Southern District of Florida Court held that:

> Therefore, because Defendants' labels comply with the FSIS's nutrition labeling regulations and have passed the FSIS preapproval process (as evidenced by Defendants' use of their labels on the products at issue in this case), the labels are presumptively lawful and not false or misleading.  As such, any state law claim based on the contention that the labels are false or misleading is preempted, because such a claim would require Plaintiff to show that the information stated on the labels should have been presented *differently* (thus, imposing a *different and/or additional* labeling requirement than those found under the FMIA and the PPIA).

*Kuenzig v. Kraft Foods, Inc.*, 2011 U.S. Dist. LEXIS 102746, at \*19-20 (M.D. Fla. Sept. 12, 2011), *aff'd*, 505 F. App'x 937 (11th Cir. 2013) (internal citation omitted) (emphasis in original); *see also Barnes v. Campbell Soup Co.*, 2013 U.S. Dist. LEXIS 118225, at \*17-18 (N.D. Cal. July 25, 2013) (holding that "[b]ecause the USDA and FSIS previously approved of Defendant's Natural Chicken Tortilla soup label . . . [the] label cannot be construed, as a matter of law, as false or misleading," and thus the plaintiff's claims under the California Unfair Competition Law were preempted by the PPIA); *Meaunrit*, 2010 U.S. Dist. LEXIS at \*21 (holding that the plaintiff's claims under the California Unfair Competition Law were preempted because "the USDA and FSIS pre-approved [the defendant]'s labeling, which means that any liability Plaintiff seeks to attach based on a state law would impose requirements on [the defendant] additional to, or different than federal law"); *Arnold v. Kroger Co.*, 45 N.E.3d 1092, 1094 (Ohio App. 2016)

9

("Therefore, because the [FSIS] preapproval process includes a determination regarding whether the label is false or misleading, and the [plaintiffs]' claims [under the Ohio Deceptive Trade Practices Act] hinge on that very determination, any liability the [plaintiffs] seek to impose based on their state-law claims would attach additional or different terms to [the defendant]'s labeling. Thus, their claims are expressly preempted by federal law.") (internal citation omitted); *see also Riegel v. Medtronic, Inc.*, 552 U.S. 312, 321 (2008) (holding that a plaintiff's state common law claims were preempted by the Medical Device Amendments of 1976 because the U.S. Food and Drug Administration provided pre-approval of the pharmaceutical label in dispute).

Because the pre-approval label process under the PPIA constitutes a determination by FSIS that the product's label is neither false nor misleading in violation of the PPIA, any state-law claim premised on the allegation that a label is false or misleading necessarily would impose a duty upon manufacturers that is in addition to, or different than, the PPIA.[3]  Accordingly, the PPIA expressly preempts Plaintiffs' claims because those claims seek to impose labeling requirements in addition to, or different than, those established by the PPIA.

## III.    Plaintiffs' Claims Cannot Be Premised on a Violation of the PPIA Because the PPIA Does Not Provide a Private Right of Action.

---

[3] To the extent Plaintiff's state law claims can be construed to impose requirements merely parallel to the regulatory requirements established by the PPIA, Plaintiffs' claims still impermissibly conflict with federal law.  The Secretary has tasked FSIS with reviewing poultry-product labels and approving only those labels that it determines are neither false nor misleading. If Plaintiffs are to prevail on their claims, such a result necessarily would conflict with and intolerably trump the FSIS's approval of Kirkland Canned Chicken's label.  *See, e.g.*, *Trazo v. Nestlé USA, Inc.*, 2013 U.S. Dist. LEXIS 113534, at *26 (N.D. Cal. Aug. 9, 2013) (reasoning that "even if the [state-law] requirements Plaintiffs seek to impose were parallel to those of the FMIA/P[PI]A, allowing a jury to weigh in on preapproved USDA labels would surely conflict with the federal regulatory scheme" because "[i]f a jury came to the same conclusion as the USDA, it would be a waste of effort; if a jury instead came to a different conclusion about the nature of the labels, the jury verdict would improperly 'trump' the USDA's authority").

There can be no dispute that the PPIA lacks a private right of action. *See, e.g.*, *Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 790 (7th Cir. 2002) ("[T]he PPIA provides no private right of action."). In enacting the PPIA, Congress mandated that all actions brought to enforce the PPIA are within the exclusive jurisdiction of the United States. Section 467c of the PPIA expressly provides that "[a]ll proceedings for the enforcement or to restrain violations of this chapter [21 U.S.C. §§ 451 *et seq.*] *shall be by and in the name of the United States*." 21 U.S.C. § 467c (emphasis added).

Plaintiffs cannot avoid this rule by simply disguising their allegations as state law claims. Because Plaintiffs' claims are predicated on violations of the labeling regulations promulgated pursuant to the PPIA, those claims thwart Congress's intent in enacting the PPIA, where it purposefully refused to provide a private right of action.

Courts in this circuit resoundingly have rejected plaintiffs' efforts to employ NYGBL § 349 as a mechanism to circumvent other statutes' express lack of a private right of action. For example, in *Verzani v. Costco Wholesale Corporation*, 2010 U.S. Dist. LEXIS 107699 (S.D.N.Y. Sept. 28, 2010), *aff'd* 432 F. App'x 29 (2d Cir. 2011), Chief Judge McMahon emphatically rejected a plaintiff's attempt to rely on purported misbranding violations of the Federal Food, Drug and Cosmetic Act ("FDCA")[4] for the purposes of his § 349 claim, articulating that:

> The FDCA lacks a private right of action and therefore Verzani cannot rely on it for the purposes of asserting a state-law consumer claim under G.B.L. § 349. Indeed, Verzani's persistent allegations that Costco's labeling of the Shrimp Tray violated the FDCA and the Food and Drug Administration's regulations on the labeling of "shrimp cocktails" indicates that his true purpose is to privately

---

[4] The FDCA's enforcement provision contains language identical to the PPIA's enforcement provision, with the exception that the FDCA also permits state governments to file suit to enforce provisions of the FDCA. *See* 21 U.S.C. § 337(a) ("Except as provided in subsection (b) [relating to state governments], all such proceedings for the enforcement or to restrain violations, of this chapter shall be by and in the name of the United States.").

enforce alleged violations of the FDCA, rather than to bring a claim for unfair and deceptive practices under G.B.L. § 349. As such, Verzani's proposed G.B.L. § 349 claim premised on violations of the FDCA could not survive a motion to dismiss.

*Id.* at \*8-9 (internal citations omitted).

In a similar case, filed under NYGBL § 349, another set of plaintiffs argued that the defendant engaged in a "deceptive act" by violating NYGBL § 601 (a statute relating to creditor-debtor communications). *Conboy v. AT&T Corp.*, 241 F.3d 242 (2d Cir. 2001) (Cabranes, J.) The Second Circuit, recognizing that the New York Court of Appeals had held "unequivocally that Section 601 does not supply a private cause of action," refused to allow the plaintiff to invoke § 349 to provide an end-run around the other New York statute's lack of a private cause of action. *Id.* at 257-58. In his opinion for the panel, Judge Cabranes reasoned:

> Plaintiffs cannot circumvent this result by claiming that a Section 601 violation is actionable under Section 349. As the District Court explained: "Allowing plaintiffs to plead a cause of action under Section 601(6) by alleging that a violation of that statute necessarily constitutes a deceptive act under Section 349 appears contrary to the New York Legislature's intent and inconsistent with the statutory scheme. The Legislature, by creating a private right of action to enforce Section 349, clearly did not intend to authorize private enforcement of Section 601, especially where Section 601 contains its own enforcement provision which explicitly dictates who can enforce that section." In other words, plaintiffs cannot thwart legislative intent by couching a Section 601 claim as a Section 349 claim.

*Id.* at 258 (quoting *Conboy v. AT&T Universal Card Servs. Corp.*, 84 F. Supp. 2d 492, 506 (S.D.N.Y. 2000)); *see also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005) (rejecting the plaintiff's NYGBL § 349 claim predicated on purported violations of a federal statute without a private right of action, reasoning that in the context of that federal statute "[w]ere we to hold, despite *Conboy*, that GBL § 349 may be used to assert a private right of action for violation of a federal law otherwise lacking one, we would essentially be attributing to the New York legislature an intent to thwart Congress's intentions on a significant scale. . . .").

Numerous courts in other jurisdictions similarly have held that a plaintiff cannot predicate a claim under a state deceptive acts or practices statute as a vehicle to privately enforce FDCA requirements. *See, e.g.*, *Henry v. Gerber Prods. Co.*, 2016 U.S. Dist. LEXIS 52638, at *23-25 (D. Ore. Apr. 18, 2016) (holding that the plaintiffs were not permitted to premise their Oregon Unfair Trade Practices Act claim on a purported violation of the FDCA, citing the FDCA's lack of a private right of action); *Loreto v. P&G*, 515 F. App'x 576, 578-79 (6th Cir. 2013) (affirming the district court's dismissal of the plaintiffs' claim that the defendant's products violated New Jersey's Consumer Fraud Act because they ran afoul of the FDCA's requirements, reasoning that "[t]he [FDCA]'s public enforcement mechanism is thwarted if savvy plaintiffs can label as arising under a state law for which there exists a private enforcement mechanism a claim that in substance seeks to enforce the FDCA.'" (quoting *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009)); *Animal Legal Def. Fund v. Provimi Veal Corp.*, 626 F. Supp. 278, 283 (D. Mass. 1986) ("More important, the [plaintiff's] complaint fails to state a claim on which relief can be granted because no private right of action can be implied under the FDCA. . . . 'A private right of action is equally inconsistent with the federal regulatory scheme, whether the right is based in federal or state law.' Massachusetts cannot confer on private persons the power to enforce a federal statute whose enforcement Congress left to federal administrative agencies. Nor can the [plaintiff] enforce chapter 94, the Massachusetts statute which parallels the FDCA, in a private action under the Massachusetts consumer protection [] statute." (internal citations omitted) (quoting *Nat'l Women's Health Network, Inc. v. A. H. Robins, Co.*, 545 F. Supp. 1177, 1181 (D. Mass 1982)).[5]

---

[5] The consequences of the PPIA's lack of a private right of action is identical whether the state-law claim is brought pursuant to NYGBL § 349, UTPCPL, or MGL, Chapter 93A.

Plaintiffs' allegations that Costco's advertisement and sale of its Kirkland Canned Chicken constitutes a deceptive practice in violation of state statutes rely wholesale on Costco's purported violation of the PPIA. Each of Plaintiffs' claims is premised on Costco's purportedly deceptive practice in "representing and suggesting to consumer that its Kirkland Canned Chicken includes an adequate amount of chicken." (*See* Am. Compl. at ¶¶ 45, 54, 60.) For their proposition that each can of Kirkland Canned Chicken does not contain an "adequate amount of chicken," Plaintiffs' Amended Complaint cites only to requirements imposed by regulations promulgated pursuant to the PPIA. (*See id.* at ¶¶ 18-20.) Indeed, Plaintiffs' calculation for their purported damages suffered as a result of Costco's allegedly deceptive acts is computed using percentages lifted directly from PPIA regulations. (*See id.* at ¶ 27, 46, 55, 61.) The very foundation of Plaintiffs' argument is that if Costco is liable under the state statutes at issue, it is responsible to the extent it violated the PPIA. To permit Plaintiffs' state law claims to proceed— claims premised entirely on alleged violations of the PPIA—would flout Congress's intent in enacting the PPIA, which expressly restricted enforcement of the PPIA's provisions and corresponding regulations to the United States government.

Accordingly, because Plaintiffs' state law claims are impermissibly predicated on an alleged violation of the PPIA, Plaintiffs' Complaint should be dismissed in its entirety.[6]

## IV.   Plaintiffs' Claims Fail as a Matter of Law Because No Reasonable Consumer Would Be Misled by Kirkland Canned Chicken's Packaging and Label.

---

[6] To the extent Plaintiffs' claims can be construed as not relying on purported violations of the PPIA—that is, that the packaging and label of Kirkland Canned Chicken is deceptive without regard to the PPIA regulations—Plaintiffs should only be permitted to proceed with respect to those allegations. Nevertheless, for the reasons discussed in Section IV, Plaintiffs' claims fail as a matter of law, whether predicated on alleged violations of the PPIA or not, because no reasonable consumer would be misled by the packaging and label of Kirkland Canned Chicken.

Plaintiffs' Amended Complaint must be dismissed because the packaging of Costco's Kirkland Canned Chicken is not deceptive. Each Plaintiff's claim fails as a matter of law because no reasonable consumer would be misled by Kirkland Canned Chicken's packaging.

### A.    New York General Business Law § 349.

NYGBL § 349(a) prohibits "[d]eceptive acts or practices in conduct of any business, trade or commerce or in the furnishing of any service in [New York]." To state a claim under Section 349, a plaintiff must prove three elements: "[F]irst, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000). Because Costco's Kirkland Canned Chicken is not misleading in a material way and no consumer could have suffered an injury as a result of Kirkland Canned Chicken's packaging and label, Plaintiff La Vigne cannot satisfy the second or third elements, and her claim under § 349 fails as a matter of law.

To satisfy the second element of Section 349, the plaintiff must establish that the challenged act or practice is deceptive—that is, that it is likely to mislead a reasonable consumer. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995). The reasonable consumer standard is an objective one, and the test used to determine whether a practice is deceptive within the meaning of the statute is whether the practice is "'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) (quoting *Marine Midland Bank*, 85 N.Y.2d at 26). "Section 349 is violated, not when the 'least sophisticated consumer' would be confused, but when 'a reasonable consumer would have been misled by defendant's conduct.'" *Sokolski v. Trans Union Corp.*, 53 F. Supp. 2d 307, 315 (E.D.N.Y. 1999) (quoting *S.Q.K.F.C., Inc. v. Bell Atl. Tricon*

*Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996)).  It is well settled that a court may determine whether a statement is deceptive under NYGBL § 349 as a matter of law.  *See Segovia v. Vitamin Shoppe, Inc.*, 2016 U.S. Dist. LEXIS 15171, at *20 (S.D.N.Y. Feb. 5, 2016) (Román, J.).

A reasonable consumer viewing the packaging of Kirkland Canned Chicken would understand that chicken comprises only a portion of the net weight indicated on the label, rather than the entire amount.  The packaging states unambiguously under the name "Premium Chunk CHICKEN BREAST" that the chicken is "Packed in Water."  (*See* Am. Compl. ¶¶ 12-13.)  The front of the packages states that the six cans each weighing 12.5 ounces is the "NET WT."  (*Id.* ¶ 12.)  The term "net weight" is defined as the weight of an item after deducting the weight of its packaging.  Black's Law Dictionary 1731 (9th ed. 2009).  Because the packaging clearly states that the contents of the cans include "Premium Chunk CHICKEN BREAST" that is "Packed in Water," a reasonable consumer would recognize that the net weight incorporates both the chicken and the water.

Furthermore, the label also states the amount of chicken provided:  2 servings of "About 21 ounces" for each package of six cans.  (*See* Am. Compl. [Dkt. 17] ¶¶ 12-13.)  Elementary arithmetic confirms that 2 servings of about 21 ounces – 42 ounces – in six cans equals roughly 7 ounces of chicken in each can.  Or, as indicated on each can:  2 servings of "About 3.5 ounces." (*See id.*)  Plaintiffs allege that they received that amount of chicken.  (*See id.* ¶ 1.)  Accordingly, Plaintiffs were not misled.

In *Verzani v. Costco Wholesale Corporation*, 2010 U.S. Dist. LEXIS 107699 (S.D.N.Y. Sept. 28, 2010), *aff'd* 432 F. App'x 29 (2d Cir. 2011), Chief Judge McMahon refused to allow a plaintiff to amend his complaint alleging a NYGBL § 349 claim under strikingly similar facts. At issue in *Verzani* was Costco's "Shrimp Tray with Cocktail Sauce," a product consisting of

shrimp, cocktail sauce, 2 lemon wedges, and piece of leaf lettuce. *See Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 294 (S.D.N.Y. 2009). Underneath the name of the product was a list of the product's ingredients and the statement "NET WT 16oz (1.00 lb)." *Id.* at 295. The plaintiff claimed that the label on the Shrimp Tray was deceptive under § 349 because, in part, "the net weight on the label could be interpreted by a reasonable consumer as referring to the net weight of the shrimp only." *Verzani*, 2010 U.S. Dist. LEXIS at *2.

In concluding that the plaintiff's claim under § 349 could not survive a motion to dismiss, Chief Judge McMahon reasoned:

> A reasonable consumer would not believe that the net weight disclosed on the label for the Shrimp Tray refers to only the shrimp. The label lists the ingredients in descending order based on their relative weight—shrimp, lemon wedges, leaf lettuce—followed by a number of ingredients that presumably comprise the cocktail sauce - such as, tomato paste, distilled vinegar, and horseradish—and clearly states 'Net WT 16Oz (1.00 lb).' As the Court explained in its July 29 decision, 'net weight means the weight of an item exclusive of its packaging.' Here, the 16 ounces refers to the weight of the shrimp, cocktail sauce, lettuce, and lemon wedges (the food components in the tray). Verzani's interpretation of 'net weight' as including 16 ounces of shrimp alone is objectively unreasonable because a simple visual inspection of the tray—with its clear plastic top—reveals that shrimp is not the only edible item inside. In fact, the product's name alone, "Shrimp Tray with Cocktail Sauce," suggests that a consumer (at a minimum) is purchasing shrimp and cocktail sauce. A reasonable consumer reading the tray's label would not pick out "shrimp" to the exclusion of all the information on the label (including the product's name and the listed ingredients) when assessing the net weight of the product.

*Id.* at *5-7 (emphasis in original) (internal citations omitted).

Like the label on Costco's Shrimp Tray, the label on the Kirkland Canned Chicken discloses the net weight on the front of the package and states directly under the name of the product that the chicken is "Packed in water." (*See* Am. Compl. [Dkt. 17] ¶ 12.) No reasonable consumer would believe that the net weight stated on the label for Kirkland Canned Chicken refers only to the chicken, rather than the entire contents of the can—chicken and water.

17

Accordingly, because no reasonable consumer would be misled by the packaging and label on Kirkland Canned Chicken, Plaintiff La Vigne's NYGBL § 349 claim fails as a matter of law.[7]

## B.   Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201.3.

Plaintiff Hessler fails to state a claim for unfair or deceptive acts or practices under Pennsylvania law.  Unlike New York's deceptive acts or practices statute, the PUTPCPL enumerates twenty-one definitions of prohibited "unfair methods of competition" and "unfair or deceptive acts or practices."  *See* PUTPCPL § 201-2(4)(i)-(xxi).  Plaintiff Hessler's Amended Complaint cites to three of these definitions.  Costco addresses each purported violation in turn.

### 1.   Allegations of False Advertising under PUTPCPL, 73 § 201-2(4)(v).

Subsection 201-2(4)(v) defines "unfair methods of competition" and "unfair or deceptive acts or practices" as "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have."  This subsection prohibits unfair or deceptive acts that are the "equivalent of false advertising."  *Weinberg v. Sun Co.*, 1999 PA Super. 228, at *47 (Sept. 10, 1999), *rev'd on other grounds*, 565 Pa. 612 (2001).

To state a claim under subsection 201-2(4)(v), Plaintiff Hessler must establish:  (1) that Costco's advertisement is false; (2) that the advertisement actually deceives or has a tendency to deceive a substantial segment of its audience; and (3) that the false advertising is likely to make a difference in a consumer's purchasing decision.  *Id.* (citing *Commonwealth v. Hush-Tone Indus., Inc.*, 4 Pa. Commw. 1, 21 (1971)).  Plaintiff Hessler must also prove that she "justifiably relied

---

[7] Plaintiff La Vigne's NYGBL § 349 claim also fails as a matter of law because she cannot establish that she suffered "actual injury" as a result of the purported deceptive act.  *Amalfitano v. NBTY, Inc.*, 9 N.Y.S.3d 352, 355 (2015).  As detailed *supra*, Kirkland Canned Chicken unambiguously states that each package of six cans has 2 servings of "About 21 ounces" and that each can has 2 servings of "About 3.5 ounces."  (*See* Am. Compl. [Dkt. 17] ¶¶ 12-14.)  Plaintiff La Vigne admits that she received that amount of chicken.  (*See id.* ¶ 1.)  Accordingly, she did not suffer any "actual injury."

on the defendant's act or practice," *see Toy v. Metro. Life. Ins. Co.*, 593 Pa. 20, 55 (2007) ("[A] plaintiff alleging violations of the Consumer Protection Law must prove the common law fraud element of justifiable reliance"), and that the alleged misrepresentation caused her loss, *see DiLucido v. Terminix Int'l*, 450 Pa. Super. 393, 401 (1996) ("[T]he use of the phrase 'as a result of' [in 73 P.R. § 201-9.2 relating to private actions brought under the PUTPCPL] indicates the intent of the Legislature to require a causal connection between the unlawful practice and a plaintiff's loss." (quoting 73 P.R. § 201-9.2)).

Plaintiff Hessler's claim under Subsection 201-2(4)(v) resoundingly fails for four independent reasons. First, Plaintiff Hessler's Amended Complaint does not claim that any of the statements on Kirkland Canned Chicken's label are false. As discussed in relation to Plaintiff La Vigne's claim under NYGBL § 349, the packaging of Kirkland Canned Chicken states unambiguously that the chicken is "Packed in Water." (Am. Compl. [Dkt. 17] ¶ 12-13.) The label also states the amount of chicken provided—an amount Plaintiff Hessler admits she received. (*See id.* ¶¶ 1, 12-13.) Accordingly, Costco's advertisement of Kirkland Canned Chicken is not false.

Second, even assuming the Kirkland Canned Chicken's packaging could be construed as being false, its label does not actually deceive or have a tendency to deceive a substantial segment of its audience. As discussed above, no reasonable consumer would be misled by Kirkland Canned Chicken's packaging. The packaging states explicitly that the chicken is packed in water and that the weight on the front of the label is the "NET WT"—an unambiguous indication that the weight relates to the entire contents of the can exclusive of the can's packaging. (*Id.* ¶ 12-13.) Basic arithmetic shows that each can of chicken contains 7 ounces of chicken.

Third, Plaintiff Hessler cannot establish justifiable reliance. Kirkland Canned Chicken's packaging indicates through the simple term "NET WT" that the weight shown on the front of the label includes both chicken and water. Further, the nutrition label further differentiates the amount of chicken from the amount of water in each can. Plaintiff Hessler does not dispute these facts. Plaintiff Hessler cannot prove that her misunderstanding of the packaging was justifiable.

Finally, Plaintiff Hessler cannot establish the necessary element of causation. As evidenced above, Plaintiff readily admits that she received the amount of chicken indicated on the label of the Kirkland Canned Chicken.

Accordingly, Plaintiff Hessler's claim under PUTPCPL § 201-2(4)(v) resoundingly fails.

2.     Allegations of Fraud under PUTPCPL, 73 § 201-2(4)(vii).

Subsection 201-2(4)(vii) defines "unfair methods of competition" and "unfair or deceptive acts or practices" as "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another." This subsection proscribes commercial acts or practices in the nature of fraud.

To state a claim under subsection 201-2(4)(vii), Plaintiff Hessler must prove the common law fraud elements under Pennsylvania law. *See Terauro v. Quigley Corp.*, 2001 Phila. Ct. Com. Pl. LEXIS 73, at *17-18 (Apr. 9, 2001). To establish common law fraud under Pennsylvania law, a plaintiff must establish: (1) a misrepresentation of a material fact; (2) scienter; (3) an intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result. *Rizzo v. Michener*, 401 Pa. Super. 47, 61 (1990).

Plaintiff Hessler cannot establish the common law fraud elements for the reasons discussed thoroughly above. Plaintiff Hessler cannot prove that the packaging and label of

20

Kirkland Canned Chicken contains any misrepresentation, that she justifiably relied on any purported misrepresentation, or that she suffered any damages as a proximate cause of any alleged misrepresentation.  Furthermore, Plaintiff Hessler has failed to raise any allegations relating to Costco's scienter—that is, facts evidencing that Costco knowingly misled consumers—or that Costco had any motive to deceive consumers.  *See Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 413 (E.D. Penn. 2006) (concluding that the allegation that misrepresentations were made "knowingly" met the scienter requirement for the purposes of a motion to dismiss).  Plaintiff Hessler's claim for fraud under PUTPCPL 201-2(4)(vii) fails.

   3.   Allegations of Fraudulent or Deceptive Conduct under PUTPCPL, 73
        § 201-2(4)(xxi).

   Subsection 201-2(4)(xxi) operates as the "catchall" provision of the Pennsylvania Consumer Protection Statute, defining "unfair methods of competition" and "unfair or deceptive acts or practices" as "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  Pennsylvania courts construe subsection 201-2(4)(xxi) as prohibiting both fraudulent conduct and deceptive conduct.  *See Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 2012 Pa. Super. LEXIS 97, at *12-26 (Mar. 6, 2012).

   A plaintiff can allege that a defendant engaged in fraudulent conduct that creates a likelihood of confusion or of misunderstanding.  To assert a claim under subsection 201-2(4)(xxi) for fraudulent conduct, a plaintiff must establish the common law fraud elements under Pennsylvania law.  For the reasons discussed in detail above in relation to Plaintiff Hessler's claim under subsection 201-2(4)(vii), her claim under 201-2(4)(xxi) similarly must be dismissed to the extent it alleges fraudulent conduct.

   A plaintiff also can claim that a defendant engaged in deceptive conduct that creates a likelihood of confusion or of misunderstanding.  Pennsylvania Courts have not established a

21

uniform standard by which a plaintiff must prove deceptive conduct under the catchall

provision.[8] But no matter what standard is applied to Plaintiff Hessler's claim under the

PUTPCPL catchall provision alleging deceptive conduct, these allegations resoundingly fail.

Again, Plaintiff Hessler cannot establish that any reasonable consumer would have been misled

by the plain packaging and label of Kirkland Canned Chicken or that she justifiably relied on

clear statements in purportedly being deceived as to the amount of chicken in each can.

Because Plaintiff Hessler's allegations do not satisfy any of the three PUTPCPL sections

cited in the Amended Complaint, Plaintiff Hessler's claim under fails as a matter of law.

### C.   Massachusetts General Law, Chapter 93A.

Plaintiff Hogan similarly fails to state a claim for an unfair or deceptive act or practice

under MGL, Chapter 93A.  Section 2(a) of Chapter 93A proscribes "[u]nfair methods of

competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

Mass. Gen. Laws. Ch. 9A, § 2(b).  "Although the statute does not itself define what constitutes

an unfair act or practice made unlawful by § 2(a), courts are to be guided by the interpretation

given to those terms by the Federal Trade Commission under the Federal Trade Commission Act

and by the Massachusetts Attorney General."  *Datacomm Interface, Inc. v. Computerworld, Inc.*,

396 Mass. 760, 778 (1986) (citations omitted).

Plaintiff Hogan alleges Costco's sale of its Kirkland Canned Chicken constitutes both an

unfair and a deceptive act or practice in violation of MGL, Chapter 93A, § 2(a).  Turning to the

standard espoused by the Massachusetts Attorney General and the Federal Trade Commission

---

[8] For instance, the Commonwealth Court of Pennsylvania has held that the test for deceptive
conduct is "whether the conduct might be deceptive to the ordinary consumer." *Commonwealth
v. Manson*, 2006 Pa. Commw. LEXIS 383, at *11-12 (July 10, 2006).  The Superior Court of
Pennsylvania has held that a trial court did not err in instructing the jury on the relevant standard
when it stated that "misleading conduct" could constitute deceptive conduct for the purposes of a
violation. *Bennett*, 2012 Pa. Super. LEXIS at *28.

governing an "unfair" act or practice, the Massachusetts Supreme Court has articulated that the

following considerations are to be used in determining whether a practice is to be deemed unfair:

> (1) whether the practice, without necessarily having been previously considered
> unlawful, offends public policy as it has been established by statutes, the common
> law, or otherwise – whether, in other words, it is within at least the penumbra of
> some common-law, statutory, or other established concept of unfairness; (2)
> whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it
> causes substantial injury to consumers (or competitors or other businessmen).

*Purity Supreme, Inc. v. Attorney Gen.*, 380 Mass. 762, 777 (1980) (quoting Fed. Reg. 8355

(1964)).  Plaintiff Hogan's Amended Complaint utterly fails as a matter of law to allege an unfair

act or practice under the standard established in *Purity Supreme*.  To the extent Plaintiff Hogan

relies on purported misrepresentations of the amount of chicken contained in each can, Costco

already has established that the packaging and label of Kirkland Canned Chicken does not

misrepresent the amount of chicken in each can.  And neither can Plaintiff Hogan rely on a

capricious allegation that the packaging and label of Kirkland Canned Chicken caused

substantial injury to consumers.  As discussed above, Plaintiff admits that she received the

amount of chicken as indicated plainly on the label of the packaging and each can.

With respect to a deceptive act or practice in violation of Section 2(a), the Massachusetts

Supreme Court has stated:

> [A] practice is "deceptive," for purposes of [MGL] c. 93A, "if it could reasonably
> be found to have caused a person to act differently from the way he [or she]
> otherwise would have acted."   "In the same vein, we have stated that conduct is
> deceptive if it possesses a tendency to deceive.  In determining whether an act or
> practice is deceptive, regard must be had, not to fine spun distinctions and
> arguments that may be made in excuse, but to the effect which [the act or
> practice] might reasonably be expected to have upon the general public."

*Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 394 (2004) (first quoting *Purity Supreme, Inc.*,

380 Mass. at 777) (second quoting *Leardi v. Brown*, 394 Mass. 151, 156 (1985)).  Again, for the

aforementioned reasons, no reasonable consumer would be misled by the plain language of the

packaging and label of Kirkland Canned Chicken. Any reasonable consumer would understand that the "NET WT" of the contents of each can of chicken includes both the chicken and the water—two components visibly listed on the front of the packaging. Furthermore, the label stated accurately the amount of chicken in each can.

Finally, the Massachusetts Supreme Court recently held that "a plaintiff bringing an action for damages under [MGL] c. 93A, § 9, must allege and ultimately prove that she has, as a result, suffered a distinct injury or harm that arises from the claimed unfair or deceptive act itself." *Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 503 (2013). Contrary to her perfunctory allegations, Plaintiff Hogan plainly cannot show a distinct injury caused by any purportedly unfair or deceptive act or practice. As expressly acknowledged in the Amended Complaint, Plaintiff Hogan received the same amount of chicken in each can as indicated on the label. Plaintiff Hogan is incapable of establishing any distinct injury as a consequence of Costco's purportedly unfair or deceptive acts or practices. Accordingly, her claim should be dismissed as a matter of law.

## CONCLUSION

For the reasons discussed above, Costco respectfully requests that the Court dismiss the Plaintiffs' Complaint against Costco with prejudice in its entirety.

Respectfully submitted, this 3rd day of April 2017.

/s/ *Richard P. O'Leary*

Richard P. O'Leary (NY Bar No. 042604)
**TROUTMAN SANDERS LLP**
875 Third Avenue
New York, New York 10022
Telephone:     (212) 704-6000
Facsimile:      (212) 704-6288
richard.oleary@troutmansanders.com

William N. Withrow (*admitted pro hac vice*)
Lindsey B. Mann (*admitted pro hac vice*)
**TROUTMAN SANDERS LLP**
600 Peachtree Street NE, Suite 5200
Atlanta, GA 30308
Telephone:     (404) 885-3000
Facsimile:      (404) 885-3900
william.withrow@troutmansanders.com
lindsey.mann@troutmansanders.com

*Counsel for Costco Wholesale Corporation*

25

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Memorandum of Law in Support of Defendant Costco Wholesale Corporation's Motion to Dismiss* was electronically filed with the Clerk of Court using the CM/ECF system.  I also certify that a copy of this *Memorandum of Law in Support of Defendant Costco Wholesale Corporation's Motion to Dismiss* was served upon counsel for Plaintiffs via U.S. Mail addressed as follows:

> WOLF POPPER LLP
> Patricia I. Avery
> Matthew Insley-Pruitt
> Robert Plosky
> 845 Third Avenue
> New York, New York 10022

This 3rd day of April 2017.

/s/ *Richard P. O'Leary*
Richard P. O'Leary (NY Bar No. 042604)
richard.oleary@troutmansanders.com