UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARY LA VIGNE, KRISTEN HESSLER, and
KATHLEEN HOGAN on behalf of themselves and all
others similarly situated,

                             Plaintiffs,

   -against-

COSTCO WHOLESALE CORPORATION,

                             Defendant.

No. 16-CV-07924 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiffs Mary La Vigne ("Plaintiff La Vigne"), Kristen Hessler ("Plaintiff Hessler"), and Kathleen Hogan ("Plaintiff Hogan") (collectively, "Plaintiffs") filed this proposed class action against the Costco Wholesale Corporation ("Defendant") alleging violations of New York, Pennsylvania, and Massachusetts statutes that prohibit deceptive marketing practices in the sale of consumer goods. Plaintiffs contend that Defendant has engaged in deceptive acts in connection with the marketing and sale of its Kirkland Signature Premium Chunk Chicken Breast ("Kirkland Canned Chicken"). Defendant now moves to dismiss Plaintiff's amended class action complaint ("Amended Complaint") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Defendant argues that the Amended Complaint must be dismissed because (1) Plaintiffs' claims are preempted by federal law; (2) Plaintiffs cannot utilize a state law claim as a vehicle to privately enforce a federal statute that lacks a private right of action; and (3) no reasonable consumer would be misled by the plain language of the packaging and label of Kirkland Canned Chicken. For the reasons stated below, Defendant's motion is GRANTED.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1 | 10 | 2018

## BACKGROUND

In considering a Rule 12(b)(6) motion, a court is limited to the facts alleged in the complaint and is required to accept those facts as true. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). A court may, however, consider documents attached to the complaint; statements or documents incorporated into the complaint by reference; matters of which judicial notice may be taken, such as public records; and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See, e.g.*, *Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (applying that rule to district courts); *accord Wechsler v. HSBC Bank USA, N.A*, No. 15-CV-5907 (JMF), 2016 WL 1688012, at *1 (S.D.N.Y. Apr. 26, 2016), *aff'd* 674 F. App'x 73 (2d Cir. 2017). Accordingly, the following facts are taken from the Amended Complaint and exhibits attached thereto or incorporated by reference therein.

Defendant is a Washington corporation that, together with its subsidiaries, operates membership warehouses throughout the country offering a range of branded and private-label products, including its house brand, Kirkland Signature. Defendant sells Kirkland Canned Chicken in its membership warehouse stores. (Am. Compl. (ECF No. 1) ¶¶ 9, 12.) The cans are grouped for sale in packages of six 12.5 ounce cans, each slightly more than two inches tall and four inches in diameter. (*Id.* ¶¶ 12, 14.) Each package is covered by an opaque plastic wrapper. (*Id.* ¶ 12.) The front of the bulk packaging reads, in large font, "Premium Chunk CHICKEN BREAST." (*Id.*) Below, in smaller font, are the phrases "Packed in Water" and "Extra Lean." (*Id.*) At the very bottom of this side of the packaging the net weight of the cans is listed as "NET WT 6-12.5 OZ (354g) CANS TOTAL 4.6 LB (2.1kg)." (*Id.*) On the reverse side, the bulk packaging includes a Nutrition Facts panel and suggested recipes for the canned chicken. (*Id.* ¶

13.) The Nutrition Facts panel includes, in bolded font, the phrase "Nutrition Facts" and immediately below, in smaller, non-bolded font the phrases "Serving Size 2 oz drained (56g)" and "Servings Per Container About 21." (*Id.*) The individual labels on each can are not visible in the bulk package prior to purchase, but each can is covered with a front label containing the product name in large font, and immediately to left of the name in smaller font the terms "Packed in Water" and "Extra Lean." (*Id.* ¶ 14.) At the bottom of each front label the net weight of the individual can is listed as "NET WT 12.5 OZ (354g)." (*Id.*) Each can also has a back label listing Nutrition Facts. (*Id.*) Immediately beneath the bolded phrase "Nutrition Facts," in smaller, non-bolded font are the phrases "Serving Size 2 oz drained (56g)" and "Servings Per Container About 3.5." (*Id.*)

Defendant provides members of its warehouse stores with a calculation of the unit price for its Kirkland Canned Chicken, which allegedly "allows customers to compare the price of its product with a competitor's chicken on a per pound basis...[T]he unit price provided by [Defendant] is calculated using the gross weight of the contents, which includes chicken and water." (*Id.* ¶ 21.)

An opened can of Kirkland Canned Chicken reveals chicken covered by a layer of water. (*Id.* ¶ 15.) If the consumer drains the 2/3 of a cup of water that the can contains, she is left with between seven and eight ounces of meat, meaning that as much as 44% of the weight of the can's contents is water. (*Id.* ¶¶ 16–17.) According to the Amended Complaint, the consumer receives little benefit from the water in the can and Defendant does not intend for consumers to use the water, as evidenced by the recipes Defendant includes with each bulk package, which direct consumers to drain the chicken before using it in a dish. (*Id.* ¶ 20.)

Plaintiff La Vigne, Plaintiff Hessler, and Plaintiff Hogan purchased Kirkland Canned Chicken from Defendant at warehouse locations in New York, Pennsylvania, and Massachusetts,

respectively, for between $10.99 and $11.99 per bulk package. (*Id.* ¶¶ 22, 23, 25.) They allege that they "reasonably believed that they were purchasing a package that contained an adequate amount of chicken in each can because of the misrepresentations on the label, the packaging, the price label on the shelf, the unit pricing, the other materials included with the package, and the size of the can." (*Id.* ¶ 27.) However, upon using the chicken to prepare meals, each Plaintiff allegedly came to learn that she had received a product with "substantially less chicken than should have been in the can." (*Id.*) Plaintiffs admit that they received the amount of chicken indicated under the Nutrition Facts label on the back of the bulk packaging and on the back label of each can, i.e., 42 ounces divided among six cans. (*Id.* ¶ 1.)

Plaintiffs support their claim that Kirkland Canned Chicken, as labeled, contains too much water and not enough chicken largely through their invocation of federal standards for the marketing of chicken products. Specifically, the Poultry Products Inspection Act ("PPIA"), 21 U.S.C. §§ 451–72, authorizes regulations relating to the disclosure of the amount of water in canned chicken products. *See* 9 C.F.R. § 381.157. According to Plaintiffs, these regulations state that "if the poultry meat is only between 50% and 80% with 20% to 50% water or broth, then the product name must disclose the percentage of water or broth." (Am. Compl. ¶ 18.) They further claim that Kirkland Canned Chicken does not comply with this requirement since each can, when opened subsequent to purchase, contains less than 80% chicken, even though the product name does not disclose the percentage of water in the can. (*Id.*)

Put simply, Plaintiffs allege, on behalf of themselves and all others similarly situated, that Defendant's conduct violates the PPIA and misleads consumers into believing that they are being charged "a reasonable price to pay for chicken" when they buy cans of Kirkland Canned Chicken, even though almost half of the contents of each can is water, and that such conduct constitutes "an

unconscionable and deceptive commercial practice" in violation of consumer protection laws in New York, Pennsylvania, and Massachusetts.[1] (*Id.* ¶¶ 1–5; *see also* ¶¶ 41–62.) Defendant moves to dismiss the Amended Complaint in its entirety.

## STANDARD OF REVIEW

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

---

[1] Specifically, Plaintiffs allege violations of New York General Business Law § 349, Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-3, and Massachusetts General Law, Chapter 93A. (*Id.* ¶¶ 41–62).

## JUDICIAL NOTICE

As a preliminary matter, the Court must assess whether the document Defendant attached to its pleadings purporting to show that the United States Department of Agriculture's ("USDA's") Food Safety Inspection Service ("FSIS") approved the label at issue in this case ("Defendant's FSIS Form 7234-1") is appropriate to consider for purposes of the instant motion. On a motion to dismiss, courts may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)–(c). Matters suitable for judicial notice include matters of public record. *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).

Defendant contends that the Court may consider Defendant's FSIS Form 7234-1 because "it is a public record and because Plaintiffs' entire case theory depends on Kirkland Canned Chicken's label." (Reply Supp. Def.'s Mot. To Dismiss (ECF No. 21) ("Def.'s Reply") 13.) Plaintiffs assert that the Court's consideration of this document is inappropriate on a motion to dismiss because the Amended Complaint "does not argue that [Defendant] submitted the label for approval" and because this document does not bear "the necessary indicia" that it is "the original or complete submission to the FSIS." (Pls.' Mem. P. & A. Opp'n Def.'s Mot. To Dismiss (ECF No. 20) ("Pls.' Opp'n") 13.) An FSIS Form 7234-1 would ordinarily be considered a matter of public record, and Plaintiffs rely on the images displayed in Defendant's FSIS Form 7234-1 in their Amended Complaint. *See Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 673 (E.D.N.Y. 2017) (taking judicial notice of certain Certificates of Label Approval ("COLA") applications reviewed and approved by the United States Alcohol and Tobacco Tax and Trade Bureau where plaintiff relied on images displayed in the COLAs in his complaint and there was no dispute as to

the COLAs' authenticity); *see also Dumas v. Diageo PLC*, 2016 WL 1367511, at *3 n.2 (S.D. Cal. April 6, 2016) (taking judicial notice of COLA applications)*; Cruz v. Anheuser–Busch, LLC*, 2015 WL 3561536, at *4 n.10 (C.D. Cal. June 3, 2015) (taking judicial notice of COLAs). However, because Plaintiffs raise concerns with regard to the authenticity of Defendant's FSIS Form 7234-1, *see* Pls.' Opp'n 13, the Court will not consider Defendant's FSIS Form 7234-1 at this time.

Nevertheless, the Court may presume that the Kirkland Canned Chicken label at issue was approved by the FSIS. The PPIA regulation discussed herein is clear that the Kirkland Canned Chicken label required FSIS pre-approval, as no exemption was applicable due to Defendant's inclusion of American Heart Association claims and a graphic representation of a heart. *See* discussion *infra* note 2. The label was actually used on the products offered for sale. (Am. Compl. ¶¶ 11–13.) *See Kuenzig v. Kraft Foods, Inc.*, 2011 WL 4031141, at *7 n.8 (M.D. Fla. Sept. 12, 2011), *aff'd*, 505 F. App'x 937 (11th Cir. 2013) ("The regulations relating to the…PPIA are clear that Defendants' labels were required to be submitted to the FSIS for approval prior to their use, and given that the labels were, in fact used, the Court will presume that the labels received the FSIS's approval."). Furthermore, while Plaintiffs challenge the authenticity of Defendant's FSIS Form 7234-1 due to concerns about page numbering, they make no allegation that Defendant did not actually receive FSIS approval.[2] Therefore, the Court will assume that there is no dispute as to the fact of FSIS approval of the Kirkland Canned Chicken label.

---

[2] Plaintiffs make the assertion that Kirkland Canned Chicken label's "'packed in water' claim is not considered a special statement or claim and, *considered alone*, likely could be submitted for approval without the USDA ever seeing the actual label." (Pls.' Opp'n 13 (emphasis added).) However, the hypothetical label Plaintiffs describe is not currently before the Court. While the FSIS does not require the submission and pre-approval of certain labels meeting requirements for "generic labels" as defined in 9 C.F.R. § 412.2, labels that include "[s]pecial statements and claims" are not exempt. 9 C.F.R. § 412.1(c)(3). Special statements and claims are defined to include "claims, logos, trademarks, and other symbols on labels that are not defined in the Federal meat and poultry products inspection regulations or the Food Standards and Labeling Policy Book," among other things. 9 C.F.R. § 412.1(e). Kirkland Canned Chicken's American Heart Association health claim, *see* Am. Compl. ¶¶ 12–13, makes it mandatory that the label be submitted for FSIS preapproval. *See* 9 C.F.R. § 412.1(b), (c)(3), (e) (requiring the submission of labeling applications for special statements and claims, including graphic representations of hearts); FSIS, *FSIS*

**DISCUSSION**

Defendant moves to dismiss on several grounds. First, it argues that Plaintiffs' state law claims are preempted by the PPIA. (Mem. Law Supp. Costco Wholesale Corporation's Mot. To Dismiss (ECF No. 19) ("Def.'s Mem.") 6–10.) Second, it argues that Plaintiffs' claims are precluded to the extent they are predicated on violations of the PPIA, which lacks a private right of action (Def.'s Mem. 10–14.) Finally, Defendant argues that Plaintiffs' claims fail as a matter of law because no reasonable consumer would be misled by Kirkland Canned Chicken's packaging and label. (*Id.* 15–24.) The Court will address each argument in turn.

**A. Preemption**

Defendant reasons that because Plaintiffs' challenges to the representations on the Kirkland Canned Chicken label fall within the express preemption clause of the PPIA and the FSIS has preapproved the challenged label, Plaintiffs' state law claims are expressly preempted. (Def.'s Mem. 10.) The Court, noting that Plaintiffs also fail to allege a violation of applicable federal law, agrees that Plaintiffs' labeling-related claims are preempted under the facts alleged. In addressing this argument, the Court will begin by describing the relevant statutory and regulatory framework controlling the labeling of poultry products.

*1. Regulatory Scheme*

Under the PPIA, Congress granted the USDA the authority to regulate the distribution and sale of poultry products shipped in interstate commerce by ensuring, among other things, that poultry products are "properly marked, labeled, and packaged." *See* 21 U.S.C. § 451. The PPIA forbids the sale of poultry products that have a false or misleading marking, labeling or container.

---

*Compliance Guidance for Label Approval*, Aug. 2017, Appendix 1, available at https://www.fsis.usda.gov/wps/wcm/connect/bf170761-33e3-4a2d-8f86-940c2698e2c5/Label-Approval-Guide.pdf?MOD=AJPERES (listing "American Heart Association" as a special claim that must be approved prior to entering commerce).

8

21 U.S.C. § 457(c). Pursuant to this prohibition, the FSIS, a public health agency of the USDA, is tasked with inspecting and approving product labels under the purview of the PPIA before products bearing that label may be sold in interstate commerce. 9 C.F.R. § 412.1(a).[3]

Additionally, canned poultry products are subject to a number of specific labeling requirements. The relevant requirement in this case states: "Canned boned poultry, except poultry within paragraph (c) of this section,[4] shall meet the requirements set forth in Table II. The percentages in Table II shall be calculated on the basis of the total ingredients used in the preparation of the product." 9 C.F.R. § 381.157(b). Table II, in turn, contains a list of percentages specifying the minimum amount of meat and maximum amount of liquid a canned chicken product may contain for each of four categories and, alongside each category's percentages, the naming requirements for products falling into each specified range. *See* 9 C.F.R. § 381.157(e). Table II appears as follows:

---

[3] The regulation provides: "No final label may be used on any product unless the label has been submitted for approval to the FSIS Labeling and Program Delivery Staff, accompanied by FSIS Form 7234-1, Application for Approval of Labels, Marking, and Devices, and approved by such staff, except for generically approved labels authorized for use in § 412.2." 9 C.F.R. § 412.1(a).

[4] Paragraph (c) carves out a separate requirement for canned boned poultry with natural juices, which is not applicable here. *See* 9 C.F.R. § 381.157(c).

**Table II**

| Product name | Minimum percent cooked, deboned poultry meat of kind indicated, with skin, fat, and seasoning | Maximum percent liquid that may be added[1] |
|---|---|---|
| 1. Boned (Kind)–solid pack | 95 | 5 |
| 2. Boned (Kind) | 90 | 10 |
| 3. Boned (Kind) with broth[2] | 80 | 20 |
| 4. Boned (Kind) (—) percent broth[2] [3] | 50 | 50 |

[1] Liquid may be in the form of, but is not limited to, broth or extractives.
[2] Alternatively, product may be prepared from raw boned poultry in combination with cooked boned poultry so long as the product complies with the specified standard.
[3] Total amount of liquid added shall be included in the name of the product: e.g., "Boned Chicken with 25 percent broth."

Thus, if based on ingredients used in preparation a product contains between 80% and 89% chicken meat and between 11% and 20% added liquid, the product name must specify that the chicken is "with broth." Alternatively, if a product contains between 50% and 79% chicken and between 21% and 50% liquid, the product name must specify the percentage of liquid it contains.

The PPIA contains a preemption clause that expressly preempts states from imposing "[m]arking, labeling, packaging, or ingredient requirements ... in addition to, or different than, those" made pursuant to the PPIA. 21 U.S.C. § 467e. However, states may, consistent with the requirements set forth under the PPIA, exercise concurrent jurisdiction with the USDA to prevent the distribution of poultry products that violate federal laws and regulations. *Id.*

### 2. Preemption Analysis

Where a statute expressly preempts state law, courts must determine the extent of that preemption based on "a fair understanding of *congressional purpose.*" *Medtronic, Inc. v. Lohr,*

518 U.S. 470, 486 (1996) (internal quotation marks and citation omitted). Courts look primarily to the text of the statute and the surrounding statutory framework, and also at the "structure and purpose of the statute as a whole, as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Id.* at 485–86 (internal quotation marks and citation omitted); *accord U.S. Smokeless Tobacco Mfg. Co. v. City of New York,* 703 F. Supp. 2d 329, 336 (S.D.N.Y. 2010); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.,* 8 F.Supp.3d 467, 473 (S.D.N.Y. 2014).

In regulating the labeling of poultry products, Congress has indicated that for a state law to be preempted it must be (1) a requirement for marking, labeling, packaging, or ingredients, and (2) different or additional to the requirements imposed by the PPIA. *See Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 444 (2005) (discussing the preemption clause of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), which contained language analogous to the language in the PPIA preemption clause).[5] A "requirement" for purposes of preemption is "a rule of law that must be obeyed" and may be created by statute, regulation, or common law duty. *Id.* at 445, 443. A requirement is in addition to or different from federal requirements if it is not "equivalent" or "parallel" to such requirements. *Id.* at 447. A "state cause of action that seeks to enforce a federal requirement does not impose a requirement that is different from, or in addition to, requirements under federal law." *Id.* at 448 (internal quotation marks and citation omitted). Moreover, preemption language similar to that which is found in the PPIA "does not preclude States from imposing different or additional *remedies,* but only different or additional

---

[5] The FIFRA preemption clause at issue in *Bates* provided that states could not "impose or continue in effect any requirements for labeling or packaging in addition to or different from those required" under FIFRA. *Bates,* 544 U.S. at 442–43 (quoting 7 U.S.C. § 136v(b)).

*requirements.*" *Id.* (quoting *Lohr*, 518 U.S. at 513 (O'Connor, J., concurring in part and dissenting in part)).

The resolution of this issue thus turns on whether Plaintiffs' state law claims amount to labeling or packaging requirements that are different from or in addition to the requirements of the PPIA and its corresponding regulations.

Defendant asserts that because Plaintiffs' state law claims are premised on the allegation that Defendant should have disclosed the percentage of liquid in its canned chicken product to avoid engaging in deceptive marketing practices, they would impose a labeling requirement on Defendant. (Def.'s Mem. 8.) The Court agrees, and Plaintiffs do not argue otherwise. Thus, the first prong of the PPIA preemption clause is satisfied.

In support of its assertion that the labeling requirement Plaintiffs seek to impose is different from or additional to federal requirements, Defendant points to a number of district court decisions that it claims stand for the proposition that "when a poultry product is subject to and passes the pre-approval process by FSIS, a plaintiff's claim under a state statute alleging that the product is deceptive is expressly preempted by the PPIA." (*Id.* 9.) As stated by one district court,

> [B]ecause Defendants' labels comply with the FSIS's nutrition labeling regulations and have passed the FSIS preapproval process (as evidenced by Defendants' use of their labels on the products at issue in this case), the labels are presumptively lawful and not false or misleading. As such, any state law claim based on the contention that the labels are false or misleading is preempted, because such a claim would require Plaintiff to show that the information stated on the labels should have been presented differently (thus, imposing a different and/or additional labeling requirement than those found under the…PPIA).

*Kuenzig*, 2011 WL 4031141, at *7 (internal citations omitted); *see also Brower v. Campbell Soup Co.*, 243 F. Supp. 3d 1124, 1129 (S.D. Cal. 2017) ("FSIS reviewed Healthy Request Gumbo's labeling to consider whether it is false or misleading and subsequently approved the label...Therefore, Plaintiffs' claims impose additional or different requirements than the PPIA...and are preempted."); *Barnes v. Campbell Soup Co.*, 2013 WL 5530017, at *5 (N.D. Cal. July 25, 2013) ("Because the USDA and FSIS previously approved of Defendant's Natural Chicken Tortilla soup label, however, the Defendant's Natural Chicken Tortilla soup label cannot be construed, as a matter of law, as false or misleading."); *Meaunrit v. ConAgra Foods, Inc.*, 2010 WL 2867393, at *7 (N.D. Cal. July 20, 2010) ("Because the pre-approval process includes a determination of whether the labeling is false or misleading, and the gravamen of Plaintiff's attack on the label concerns whether those instructions are accurate, the plaintiff's state causes of action are preempted by federal law.").

Plaintiffs claim that their case is distinguishable because "none of these cases alleged that the defendant failed to follow existing USDA regulations and the cases instead sought to impose additional requirements that are not in the regulations and would be at odds with agency policy." (Pls.' Opp'n 11.) Conversely, Plaintiffs argue, Defendant's Kirkland Canned Chicken label clearly violates a "clear, unambiguous, and simple" regulation promulgated under the PPIA applicable to the labeling of canned poultry. (*Id.* 7). Thus, the instant action merely seeks to impose the same requirements as exist under federal law.

Specifically, Plaintiffs allege that "Kirkland Canned Chicken does not comply with [the requirements of 9 C.F.R. § 381.157] since it contains less than 80% chicken and does not disclose the percentage of water in the can." (Am. Compl. ¶ 18.) Plaintiffs apparently base this allegation on the amount of chicken meat and water present in a can of Kirkland Canned Chicken when

opened by a consumer. (*See id.* ¶¶ 15–17). Nowhere in the pleadings do Plaintiffs address the federal regulation's requirement that the percentages of liquid and meant in Table II be calculated "on the basis of the total ingredients used *in the preparation of* the product," 9 C.F.R. § 381.157(b) (emphasis added), nor do they make any allegation that Defendant's product did not comply with Table II's requirements on that basis.

It is true that there are circumstances under which courts may allow state consumer law claims to proceed even when manufacturers comply with federal labeling laws: "even if ... the labeling meets the floor established by federal regulations, there is nothing to indicate that it could not still be misleading and therefore actionable under the state consumer protection laws." *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 375–76 (E.D.N.Y. 2016); *see also Goldemberg*, 8 F. Supp. 3d at 473–76 (finding plaintiff's claim that the name of a series of cosmetic products was misleading in violation of New York law was not preempted by the Food, Drug, and Cosmetic Act of 1938 ("FDCA"), even though defendant's label complied with FDCA ingredient listing requirements). Moreover, state law claims that explicitly track requirements imposed by federal law and merely seek damages under state law for a defendant's alleged failure to comply with federal labeling requirements are not preempt where the controlling federal statute's preemption provision allows for state laws that are not different from or in addition to the federal requirements. *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 283–84 (S.D.N.Y. 2014) (noting that nothing in the applicable federal laws at issue in the case "expressly preempts state law claims for deceptive practices premised on an alleged failure to follow federal food labeling requirements"). State law claims premised on violations of federal law may even survive where a federal agency has preapproved the label in question. *See Wyeth v. Levine*, 555 U.S. 555, 558 (2009) (state law failure-to-warn claims were not preempted by the

Food and Drug Administration's approval of a drug's labeling); *see also Segedie v. Hain Celestial Grp., Inc.*, 2015 WL 2168374, at \*4–\*7 (S.D.N.Y. May 7, 2015) (finding New York and California consumer protection claims not preempted by pre-certification of "Organic" labeling where products at issue contained ingredients that federal law prohibited in organic products).[6] In *Medtronic, Inc. v. Lohr*, the Supreme Court, interpreting a preemption clause containing language similar to 21 U.S.C. § 467e, noted that "[t]he presence of a damages remedy does not amount to the additional or different 'requirement' that is necessary under the statute; rather, it merely provides another reason for manufacturers to comply with identical existing 'requirements' under federal law." *Lohr*, 518 U.S. at 495. While the elements necessary to prove a state law claim might be "'different from' the federal rules in a literal sense, such a difference would surely provide a strange reason for finding pre-emption of a state rule insofar as it duplicates the federal rule." *Id.*

Plaintiffs argue that because they are merely seeking damages for claims that are premised on a violation of federal law, they should be allowed to proceed. However, based on the plain meaning of "preparation,"[7] the Court cannot agree with Plaintiffs that Defendant's alleged conduct amounts to a violation of 9 C.F.R. § 381.157. Plaintiffs' state law claims are based on an alternative understanding of 9 C.F.R. § 381.157 for which they offer no support in the pleadings. Accordingly, there is no reason to depart from a plain understanding of the text.

Plaintiffs' assertion that FSIS preapproval should carry no preemptive weight in this case also fails. The Court notes that FSIS Form 7234-1, which must be submitted to the FSIS for all

---

[6] Neither of the federal laws at issue in *Wyeth* and *Segedie* included an express preemption clause. *See Wyeth v. Levine*, 555 U.S. 555, 574 (2009) (noting that "[i]f Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point during the [Food, Drug, and Cosmetic Act]'s 70-year history"); *Segedie v. Hain Celestial Grp., Inc.*, 2015 WL 2168374 \*4 (S.D.N.Y. May 7, 2015).

[7] The word "preparation" is defined as "1a : the action or process of making something ready for use or service." *Webster's Third New International Dictionary* 1790 (Philip Babcock Gove et al. eds., 2002).

labels that require FSIS preapproval, contains a section where "Product Formula" must be listed by weight and percentage.[8] Presumably, Defendant's mandatory submission included this information, which was reviewed and approved by the FSIS. The FSIS review also includes a determination of whether a label is false or misleading. *See* 21 U.S.C. § 457; *see also, e.g.,* *Meaunrit*, 2010 WL 2867393, at *6; *Brower*, 243 F.Supp.3d at 1129.

Plaintiffs make no allegations to the contrary, nor do they argue that Defendant altered its label or product formula after FSIS preapproval. Instead, Plaintiffs challenge the FSIS review itself because they claim that "any determination by FSIS through the pre-market label review program that Kirkland Canned Chicken meets [the federal standard in 9 C.F.R. § 381.157] is plainly erroneous and inconsistent with the regulation" and that the FSIS review process "does not have sufficient indications of reliability to justify judicial deference to any finding" that the label complies with the regulation. (Pls.' Opp'n 11–12.) This argument is unavailing as it is unpersuasive and unsupported by authority. Further, this Court disagrees with Plaintiffs' assertion that Defendant's conduct, as alleged in the Amended Complaint, is inconsistent with the federal regulation.

Because Plaintiffs claim that Defendant's label is misleading is based on its presentation of information disclosing the contents of Kirkland Canned Chicken, a jury's finding for Plaintiffs would directly conflict with the FSIS's assessment, in which case it would introduce requirements in addition to or different from those imposed by the PPIA and its corresponding regulations. Thus, while FSIS review and approval may not be an impenetrable barrier to state law deceptive practice claims, under the circumstances presented here, the FSIS review of Kirkland Canned Chicken's

---

[8] This suggests that the FSIS specifically evaluates labels in the context of what a product contains. Form 7234-1 is available at https://www.fsis.usda.gov/wps/wcm/connect/4aeeca8c-8ba6-4288-a222-e6ca8764a9f7/FSIS_7234-1_Approval_of_Labels.pdf?MOD=AJPERES.

label is entitled to preemptive effect. The Court notes further that even if it were to limit the preemptive scope of the FSIS review in this case, the result would not change. Based on the allegations in the Amended Complaint, the success of Plaintiffs' state law claims is dependent on a showing that Defendant should have made disclosures on its label that were affirmatively not required under federal regulations. Therefore, even without considering the FSIS review, Plaintiffs' state law claims impose requirements different from or additional to federal requirements regulating canned chicken and are preempted.

However, preemption does not bar Plaintiffs' state law claims to the extent that they are not based on labeling-related allegations. While Plaintiffs devote much of their attention in the pleadings to Kirkland Canned Chicken's labeling deficiencies, they also incorporate assertions related to "the packaging, the price label on the shelf, the unit pricing [on a separate shelf label showing the price per ounce of the product], the other materials included with the package, and the size of the can," (Am. Compl. ¶ 27.) Insofar as Plaintiffs' challenges to these aspects of Defendant's marketing practices do not implicate the FSIS-approved labeling, they are not preempted and survive at this stage of the Court's analysis.

## B. Private Right of Action

Defendant argues that "[b]ecause Plaintiffs' claims are predicated on violations of the labeling regulations promulgated pursuant to the PPIA, those claims thwart Congress's intent in enacting the PPIA, where it purposefully refused to provide a private right of action." (Def. Mem. 11.) As Plaintiffs' labeling-related claims are disposed of on other grounds, the Court need not address the merits of this argument.

## C. Failure to State a Claim

Because Plaintiffs' labeling-related claims are preempted, Plaintiffs can bring their state law claims only if their remaining allegations with regard to packaging size and Defendant's use of a shelf label calculating unit price are sufficient to state a claim upon which relief may be granted. Plaintiffs' state law claims ultimately fail on the merits because Plaintiff cannot plausibly state that Defendant's alleged practices rendered Kirkland Canned Chicken's label false or misleading under the applicable standards of consumer protection laws in New York, Pennsylvania, or Massachusetts.

### 1. New York General Business Law § 349

Defendant seeks to dismiss Plaintiff La Vigne's claims under N.Y. GBL Section 349 ("Section 359"), which prohibits deceptive business practices, (Def.'s Mem. 15–18), on the grounds that the conduct alleged is not misleading in a material way and no consumer could have suffered an injury as a result of Kirkland Canned Chicken's marketing. (Def.'s Mem. 15.)

To state a *prima facie* claim under Section 349, a plaintiff must allege that the defendant (1) engaged in consumer-oriented conduct; (2) that the conduct was materially misleading; and (3) that the plaintiff suffered injury as a result of the allegedly deceptive act or practice. *See, e.g., City of N.Y. v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621, 888 N.Y.S.2d 722, 911 N.E.2d 834 (2009). Claims brought under Section 349 are not subject to the heightened pleading requirements set forth in Rule 9(b). *Pelman ex. rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

It is undisputed that Plaintiff La Vigne has met the first prong of her Section 349 claim: there is no question that the sale of Kirkland Canned Chicken constituted "consumer-oriented

conduct."[9] This element "may be satisfied by showing that the conduct at issue potentially affects similarly situated consumers." *Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70, 84 (2d Cir. 2015) (citation omitted). "[E]ven the sale of high-end wine has been held sufficiently 'consumer-oriented' to support a claim under § 349." *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 643 (S.D.N.Y. 2016), *reconsideration denied*, No. 16-CV-3224 (JSR), 2016 WL 7188788 (S.D.N.Y. Nov. 17, 2016) (citing *Koch v. Greenberg*, 626 F. App'x. 335, 340 (2d Cir. 2015) ("[G]iven that the defendant provided wine to be sold at auction to other consumers similarly situated to [plaintiff], the consumer-oriented conduct requirement has been met.")).

As for the "materially misleading" prong, "[t]he New York Court of Appeals has adopted an objective interpretation of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y. 2d 20, 26 (1995)). Courts "view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Delgado v. Ocwen Loan Servicing, LLC*, 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014) (internal citation and quotation marks omitted). Likewise, "[i]n determining whether a reasonable consumer would be misled by the size of [a product's] packages, the Court must consider the entire context of the

---

[9] As a threshold matter, the New York Court of Appeals has emphasized that "section 349 is a broad, remedial statute and that the provision creating a private right of action employs expansive language." *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 643 (S.D.N.Y. 2016), *reconsideration denied*, No. 16 CIV. 3224 (JSR), 2016 WL 7188788 (S.D.N.Y. Nov. 17, 2016) (citing *Blue Cross & Blue Shield of N.J., Inc.*, 785 N.Y.S.2d 399, 818 N.E.2d at 1144). As such, § 349 "appl[ies] to virtually all economic activity, and [its] application has been correspondingly broad," as "[t]he reach of [this] statute [ ] provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in [New York]." *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 690 N.Y.S.2d 495, 712 N.E.2d 662, 665 (1999) (internal quotation marks omitted); see also *Aghaeepour v. N. Leasing Sys., Inc.*, 2015 WL 7758894, at *14 (S.D.N.Y. Dec. 1, 2015) ("[T]he requirement that defendants engage in consumer-oriented conduct has been construed liberally."). In other words, the "statute seeks to secure an honest market place where trust, and not deception, prevails." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 746 N.Y.S.2d 858,774 N.E.2d 1190, 1195 (2002) (internal quotation marks omitted).

[package]." *Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211 (E.D.N.Y. 2016) (internal citation and quotation marks omitted). "The entire mosaic" is "viewed rather than each tile separately." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007) (citation omitted). The "issue may be a question of law or of fact as individual cases require." *Delgado*, 2014 WL 4773991, at *8 (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741, 745 (1995)).

According to Plaintiffs, Defendant packages Kirkland Canned Chicken in "large cans that are filled with useless water, conveying the impression that the cans will have a substantial amount of chicken." (Pls.' Opp'n 20.) This problem is allegedly compounded by the fact that Defendant provides a "unit price" label on the shelf that calculates the price for Kirkland Canned Chicken by ounce, but includes water in its calculation. (Am. Compl. ¶ 21.)

This Court and other district courts have found that it is not reasonable for a consumer to expect that they are purchasing a certain amount of product solely because of the size of its packaging. *See Stewart v. Riviana Foods Inc.*, 2017 WL 4045952, at *10 (September 11, 2017) (finding that it was not reasonable for a consumer to expect 16 ounces of pasta in a box solely because she had purchased different pasta products from the same brand in similarly-sized boxes); *see also Fermin*, 215 F. Supp. 3d at 212 (finding as a matter of law that a drug's packaging could not be misleading to a reasonable consumer merely because it was not filled to capacity with pills, where the total pill-count was stated on the label). However, context is crucial in determining whether a reasonable consumer would have been misled by a particular element of a product's packaging. *See Stewart*, 2017 WL 4045952 at *9. Here, the front of each can of Kirkland Canned Chicken is labeled to clearly indicate that it contains canned chicken "packed in water." (Am. Compl. ¶¶ 12, 18.) The label also displays the net weight per can of the enclosed product. (*Id.* ¶

12.) This net weight is presumably used to calculate the unit pricing per ounce of product, as listed on a separate shelf label.[10] (*See id.* ¶ 21.) Furthermore, the back of a package of Kirkland Canned Chicken clearly states the total servings of chicken available in each package after the water has been drained. (*Id.* ¶ 13.)

Given the clear disclosure on the bulk packaging and each individual can that the chicken is packed in water, as well as the indication under the Nutrition Facts label that a serving of the product is calculated on a "drained" weight basis, it seems clear that a reasonable consumer would understand a can of Kirkland Canned Chicken to contain both chicken and some amount of water. Nevertheless, Plaintiffs apparently did not rely on the disclosures on the packaging, which they agree accurately convey the contents of the product, in making their purchases. (*See id.* ¶ 1 (noting that each can "contains slightly more than seven ounces of chicken," in accordance with the information on the label).) Rather, they allege that the size of the product containers and the unit pricing label based on net weight led them to expect that they were purchasing a "substantial" amount of chicken. Plaintiffs provide no basis for ignoring the plain language on Kirkland Canned Chicken's packaging, or for assuming that the unit pricing labels were based on the net weight of the chicken alone rather than the total contents of the cans.

Having considered Plaintiff La Vigne's allegations in the context of the entire Kirkland Canned Chicken package, including its label, the Court finds as a matter of law that the size of the cans and the unit pricing label would not have misled the reasonable consumer. Accordingly, Plaintiff La Vigne's claims fail.

---

[10] The term "net weight" means "[t]he total weight of a thing, after deducting its container, its wrapping, and any other extraneous matter." Black's Law Dictionary 1828 (10th ed. 2014). "Extraneous" means "from outside sources; of, relating to, or involving outside matter." *Id.* at 706. Thus, the net weight of Kirkland Canned Chicken may be fairly understood as the weight of everything inside the can, including both chicken and water. Plaintiffs do not provide any basis for an alternative understanding of net weight as used here.

## 2. *Pennsylvania Unfair Trade Practices and Consumer Protection Law*

Next, Defendant seeks to dismiss Plaintiff Hessler's claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-3, which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices," as defined by statute. (Def.'s Mem. 18–22). "What a plaintiff must include in a complaint in order to allege a violation of the UTPCPL depends on which section of the UTPCPL a defendant allegedly violated." *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 392, 412 (E.D. Pa. 2006). Plaintiff Hessler cites to three of the UTPCPL statutory definitions under UTPCPL, 73 P.S. § 201-2 ("Subsection 201-2"). The Court will address each in turn.

### *73 P.S. § 201-2(4)(v)*

Subsection 201-2(4)(v) defines "unfair methods of competition" and "unfair or deceptive acts or practices" to include "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have." 73 P.S. § 201-2(4)(v). Subsection 201-2(4)(v) applies only to claims of false advertising. *See Karlsson v. Fed. Deposit Ins. Corp.*, 942 F. Supp. 1022, 1023 (E.D. Pa. 1996), *aff'd*, 107 F.3d 862 (3d Cir. 1997); *Weinberg v. Sun Co.*, 740 A.2d 1152, 1167 (Pa. Super. Ct. 1999), *rev'd on other grounds*, 565 Pa. 612, 777 A.2d 442 (2001). "To allege a violation of [Subsection 201-2(4)(v)] of the UTPCPL, a plaintiff must allege that the advertisement is false, 'that it actually deceives or has a tendency to deceive a substantial segment of its audience, and that the false advertising is likely to make a difference in the purchasing decision.'" *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 412 (citing *DiLucido v. Terminix Int'l, Inc.,* 450 Pa. Super. 393, 401, 676 A.2d 1237, 1240–41 (1996)); *see also Fay v. Erie Ins. Group*, 723 A.2d 712, 714 (Pa. Super. Ct. 1999). Moreover, a plaintiff has the burden of establishing justifiable reliance, the same level of reliance

required under a common law fraud claim, on the defendant's alleged misrepresentations. *Id. See also Hunt v. U.S. Tobacco Co.,* 538 F.3d 217, 221–24, 222 (3d Cir. 2008) ("The Supreme Court of Pennsylvania has consistently interpreted the Consumer Protection Law's private-plaintiff standing provision's causation requirement to demand a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm."); *Toy v. Metro. Life Ins. Co.,* 593 Pa. 20, 55, 928 A.2d 186 (2007) (construing Subsection 201-9(2), which provides for a private right of action under the UTPCPL) (holding that "a plaintiff alleging violations of the [UTPCPL] must prove the common law fraud element of justifiable reliance"). A plaintiff must show that she suffered harm as a result of her justifiable reliance on the defendant's wrongful conduct or representation. *See Santana Products, Inc. v. Bobrick Washroom Equip., Inc.,* 401 F.3d 123, 136 (3d Cir.2005) ("The Supreme Court of Pennsylvania has held that a plaintiff bringing an action under the UTPCPL must prove the common law fraud elements of reliance and causation with respect to all subsections of the UTPCPL."); *see also McCabe v. Marywood University,* 166 A.3d 1257, 1263 (Pa. Super. Ct. 2017).

The Amended Complaint alleges that the physical packaging and unit pricing accompanying Kirkland Canned Chicken falsely conveyed to Plaintiff Hessler that each can contained a larger amount of chicken than was actually in the can. However, as discussed above, the cans' labels clearly stated that the chicken was packed in water. The back of each label also accurately disclosed the amount of drained chicken product in each can. Plaintiffs provide no basis for ignoring these disclosures, nor do they dispute that they received the amount of chicken indicated on the package labels. Furthermore, they have made no assertion that the unit pricing labels, which are calculated on the basis of a product's net weight, were incorrect with regard to

the total contents of a can of Kirkland Canned Chicken. Thus, Plaintiff Hessler fails to allege a misrepresentation in satisfaction of the first element of a Section 202-2(4)(v) claim.

*73 P.S. § 201-2(4)(vii)*

Subsection 201-2(4)(vii) defines "unfair methods of competition" and "unfair or deceptive acts or practices" to include "[r]epresenting that goods are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another." 73 P.S. § 201-2(4)(vii). Since it is considered fraud-based, a claim under Subsection 201-2(4)(vii) requires a plaintiff to prove all of the elements of common law fraud. *See Giangreco v. United States Life Ins. Co.*, 168 F. Supp. 2d 417, 424 (E.D. Pa. 2001). To sustain a claim for common law fraud under Pennsylvania law, a plaintiff must show (1) a material misrepresentation, (2) made with knowledge of its falsity or reckless disregard for its truth and (3) with the intent of misleading another into relying upon it, (4) justifiable reliance on the misrepresentation, and (5) a resulting injury proximately caused by the misrepresentation. *See id.* at 423; *see also First Capital Corp. v. Country Fruit, Inc.*, 19 F. Supp. 2d 397, 401 (E.D. Pa. 1998); *Gibbs v. Ernst*, 538 Pa. 193 (1994).

As discussed above, Plaintiff Hessler has not made a convincing allegation that Kirkland Canned Chicken's packaging size and its accompanying unit pricing label amount to a misrepresentation. Any impression that a can of Kirkland Canned Chicken contained a "substantial" amount of chicken, in Plaintiffs' opinions, created by the size of the cans or the unit pricing, was dispelled by Defendant's clear disclosures on the label. *Cf. Fisher v. Aetna Life Ins. & Annuity Co.*, 39 F. Supp. 508, 512 (M.D. Pa. 1998), *aff'd* 176 F.3d 472 (3d Cir. 1999) (finding that although challenged insurance policy was not "simple and straightforward," it "accurately inform[ed] the policyholder" of the relevant risks purchasers now complained of and thus could not support a finding of misrepresentation); *Giangreco*, 168 F. Supp. 2d at 424 (no material

24

misrepresentation where challenged insurance policy made clear disclosure of terms).[11] Therefore, Plaintiff Hessler cannot make out the first element of a Subsection 201-2(4)(vii) claim. Accordingly, her fraud-based claims under Subsection 201-2(4)(vii) fail.

*73 P.S. § 201-2(4)(xxi)*

Subsection 201-2(4)(xxi) is the catchall provision of the UTPCPL, adding to the list of unfair practices "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-4(xxi). The Third Circuit has noted that "[i]n the wake of an amendment to the UTPCPL in 1996 that expanded the catch-all provision to cover 'deceptive' as well as fraudulent conduct, Pennsylvania law regarding the standard of liability under the UTPCPL catchall is 'in flux.'" *Belmont v. MB Inv. Partners Inc.*, 708 F.3d 470, 498 (3d Cir. 2013) (internal quotation marks and citation omitted). However, most Pennsylvania courts have held that the 1996 amendment "lessened the degree of proof required under the UTPCPL catchall provision" so that plaintiffs alleging deceptive conduct may proceed without satisfying all of the common law elements of fraud. *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 153–54 (Pa. Super. Ct. 2012) (collecting state and federal court cases). Hence, the predominant view is that to prevail on a claim under Subsection 201-2(4)(xxi), a plaintiff need only show "(1) a deceptive act..., (2) justifiable reliance on that act; and (3) a resulting 'ascertainable loss.'" *Malibu Media, LLC v. Doe*, 238 F. Supp. 3d 638, 647 (M.D. Pa. 2017) (citing *Slapikas v. First Am. Title Ins. Co.*, 298 F.R.D. 285, 292 (W.D. Pa. 2014)); *see also Prakala v. Elle*, 11 F. Supp. 3d 443, 447 (M.D. Pa. 2014); *Seldon v. Home Loan Servs.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009). A "deceptive act" is conduct that is "likely to deceive a consumer acting

---

[11] *Fisher v. Aetna Life Ins. & Annuity Co.* and *Giangreco v. United States Life Ins. Co.* involved both common law fraud claims and fraud-based claims under the UTPCPL. *See Fisher v. Aetna Life Ins. & Annuity Co.*, 39 F. Supp. 2d 508, 511 (M.D. Pa. 1998), *aff'd* 176 F.3d 472 (3d Cir. 1999); *Giangreco v. United States Life Ins. Co.*, 168 F. Supp. 2d 417, 417 (E.D. Pa. 2001).

reasonably under similar circumstances." *Seldon*, 647 F. Supp. 2d at 470 (citing Black's Law Dictionary 455 (8th ed. 2004)); *see also Malibu Media, LLC*, 238 F. Supp. 3d at 647; *Prakala*, 11 F. Supp. 3d at 447.

Here, Plaintiff Hessler fails to adequately allege a deceptive act on behalf of Defendant because Defendant's alleged conduct would not be misleading to a reasonable consumer. Accordingly, Plaintiff Hessler's Subsection 201-2(4)(xxi) claim fails.

### 3. *Massachusetts General Law Chapter 93A*

Finally, Defendant seeks to dismiss Plaintiff Hogan's claims under Massachusetts General Law, Chapter 93A ("Chapter 93A") on the grounds that the Amended Complaint fails as a matter of law to allege an unfair or deceptive act or practice.

A plaintiff seeking relief under Chapter 93A must prove that the defendant engaged in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ann. ch. 93A, § 2(a). "Under Chapter 93A, an act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; 'is immoral, unethical, oppressive, or unscrupulous'; and 'causes substantial injury to consumers.'" *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (citing *PMP Assocs. v. Globe Newspaper Co.*, 366 Mass. 593, 321 N.E.2d 915, 917 (1975) (quoting 29 Fed. Reg. 8325, 8355 (1964)). Moreover, to rise to the level of an "unfair" act or practice, "the defendant's conduct must generally be of an egregious, non-negligent nature." *Id.*; *see also Baker v. Goldman, Sachs & Co.*, 771 F.3d 37, 51 (1st Cir. 2014).

An act or practice is deceptive pursuant to Chapter 93A "if it possesses a tendency to deceive and if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted," *Walsh*, 821 F.3d at 160 (citing *Aspinall v. Philip Morris*

*Cos., Inc.*, 442 Mass. 381, 813 N.E.2d 476, 486–87 (2004)) (quotation marks omitted), or, in other words, if it has the capacity "to entice a reasonable consumer to purchase the product," *Aspinall*, 442 Mass. at 394, 813 N.E.2d at 487–88 (noting that this standard is "more difficult to satisfy because it depends on the likely reaction of a reasonable consumer rather than an ignoramus"). In determining whether an act or practice is deceptive, regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which [the act or practice] might reasonably be expected to have upon the general public." *Id.* at 487. "Whether conduct is deceptive is initially a question of fact, to be answered on an objective basis." *Id.* at 486.

To successfully bring a Chapter 93A claim, a plaintiff must establish that the defendant's unfair or deceptive act or practice caused an adverse consequence or loss. *Id.* (citing *Rhodes v. A.I.G. Domestic Claims, Inc.*, 461 Mass. 486, 961 N.E.2d 1067, 1076 (2012)).

Defendant's alleged conduct has not risen to the level of being "unfair" under Massachusetts law because Defendant's FSIS-approved labeling and packaging complied with applicable federal laws and did not misrepresent the contents of Kirkland Canned Chicken. The Court does not find that this amounts to an "immoral, unethical, oppressive, or unscrupulous" trade practice. Likewise, Plaintiffs fail to establish that Kirkland Canned Chicken's packaging and unit pricing label would deceive a reasonable consumer. Accordingly, Plaintiff Hogan's Chapter 93A claims fail.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 18 and to close the case.

Dated:   January 10, 2018             SO ORDERED:
          White Plains, New York

NELSON S. ROMÁN
United States District Judge